In re FIDELITY MORTGAGE
INVESTORS, Debtor.

LIFETIME COMMUNITIES,
INC., Appellant,

v.

The ADMINISTRATIVE OFFICE OF the
UNITED STATES COURTS, Appellee.

No. 81 Civ. 0544 (KTD).

United States District Court,
S. D. New York.

Dec. 17, 1981.

Levy & Erens, Chicago, Ill., for appellant; Theodore L. Freedman, James M. Lawniczak, Chicago, of counsel.

Kenneth Singer, Jacksonville, Fla., Vice President/Gen. Counsel Lifetime Communities, Inc.

Lumbard & Phelan, New York City, for appellant; Eliot Lumbard, New York City, of counsel.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for appellee; Stuart M. Bernstein, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Fidelity Mortgage Investors ["FMI"] filed a petition for an arrangement under Chapter XI of the Bankruptcy Act on January 30, 1975. Pursuant to the Confirmation Order entered on January 4, 1978, FMI was merged into a newly formed corporation called Lifetime Communities, Inc. ["Lifetime"], which assumed all of FMI's assets and liabilities. Under Section 40(c)(2) of the Bankruptcy Act, 11 U.S.C. § 68(c)(2) (1976), FMI was required to remit a fee into the referee's salary and expense fund based upon the amount to be paid to unsecured creditors under the plan of arrangement. In 1970, the United States Judicial Conference set the rate for such fees at 3 percent for the first $100,000 distributed and 1.5 percent of the balance, for all cases filed on and after July 1, 1970. The parties are in accord that under this schedule Lifetime's obligation to the fund is approximately $1.69 million.

Lifetime appeals from the Memorandum Endorsement and Order of Bankruptcy Judge Babitt, dated November 25, 1980, denying its application for a reduction or elimination of this fee. Essentially, Lifetime argues that the fee should be eliminated because the 1970 schedule was not promulgated by the Judicial Conference pursuant to the Administrative Procedures Act ["APA"], and because the levying of such a large fee is simply inequitable, especially in light of the subsequent change in the rule by Congress which limits such contributions to $100,000.

## I.

The appellant's first argument is that the 1970 Schedule promulgated by the Judicial Conference is void and unenforceable because the Conference failed to comply with the notice and hearing requirements of the APA. Although the definition of an "agency" for the purposes of the APA expressly precludes the courts, 5 U.S.C. § 551, the appellant argues that the fee setting function of the Judicial Conference is an administrative act and therefore subject to the APA.

This argument is not persuasive. While the cases cited by Lifetime liken the Judicial Conference to an administrative agency and characterize its functions as administrative, e.g., Chandler v. Judicial Council, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970); Nolan v. Judicial Council of the Third Circuit, 481 F.2d 41 (3d Cir.), cert. denied, 414 U.S. 880, 94 S.Ct. 71, 38 L.Ed.2d 125 (1973); In re Mesa Farm Co., 475 F.2d 1004 (9th Cir. 1973), none of them hold that this arm of the courts is an agency subject to the APA. In Warth v. Department of Justice, 595 F.2d 521, 523 (9th Cir. 1979), the court held that, because the courts are not agencies under the APA, and the Freedom of Information Act incorporated therein, court records were not agency documents. Just as quasi-judicial proceedings by administrative agencies are not court proceedings and hence are subject to the APA, see Wacker v. Bisson, 348 F.2d 602, 608 (5th Cir. 1965), it follows that the quasi-administrative function of the courts are not necessarily agency functions subject to the APA. Furthermore, the Judicial Conference is made up exclusively of members of the judiciary. The APA excludes the entire judicial branch of the federal government. Seltzer v. Foley, 502 F.Supp. 600 (S.D.N.Y.1980).

## II.

The balance of the appellant's argument is premised on the assumption that a fee of $1.69 million pursuant to the dictates of fee schedule is *per se* inequitable. The fee structure was instituted pursuant to the expressed intent of Congress that the bankruptcy system under the old code be self-supporting and paid for by those who used it rather than by tax revenues from the public at large. *United States v. Kras*, 409 U.S. 434, 448, 93 S.Ct. 631, 639, 34 L.Ed.2d 626 (1978). Consequently, the fee can be more rightly viewed as a user tax rather than a fee for services as argued by the appellant. In this light, an assessment of 1.5 percent of the assets distributed to unsecured creditors is not *per se* inequitable.

Nor can it be said that the fee is inequitable as applied in this case. The fee schedule was known at the time the debtor sought the protection of the bankruptcy court. The fee itself had to be figured into the successful arrangement under which the debtor now operates. What the appellant really seeks is a windfall to those who have accepted its newly issued stock.

The order appealed from is in all respects affirmed.

SO ORDERED.