**In re Dorothy J. WILLIAMSON, Debtor.**

**Dorothy J. WILLIAMSON, Plaintiff,**

**v.**

**GENERAL FINANCE CO. OF GEORGIA, and Gus Skinner, in his capacity as Marshal of the Municipal Court of Columbus, Defendants.**

**Dorothy J. WILLIAMSON, Plaintiff,**

**v.**

**MONTGOMERY WARD & CO., Defendant.**

**Bankruptcy No. 82–40630–COL.**
**Adv. Nos. 82–4386–COL, 82–4421–COL.**

United States Bankruptcy Court, M.D. Georgia.

March 14, 1983.

Paul E. Kauffman, Columbus, Ga., for plaintiff.

James A. Elkins, Jr., Columbus, Ga., for defendant General Finance Co.

Michael P. Cielinski, Columbus, Ga., for defendant Montgomery Ward & Co.

COMPLAINT TO AVOID JUDICIAL LIEN, PREFERENCE, SECURITY INTEREST AND RECOVER PROPERTY AND FOR PRELIMINARY INJUNCTIVE RELIEF

OPINION

ALGIE M. MOSELEY, Jr., Bankruptcy Judge.

In these two adversary proceedings, one being a complaint to avoid lien under § 522(f) and the other being a complaint to avoid judicial lien, preference, security interest, and recover property, and for preliminary injunction, the Defendants have each asserted that this Bankruptcy Court, in light of *Northern Pipeline,* has no jurisdiction, and they further assert the invalidity of the Emergency Rule adopted by the District Court Judges.

Hereinafter, the conclusion is reached that the Bankruptcy Court and the District Court are each without exercisable jurisdic-

tion and that the District Court not having any exercisable jurisdiction, cannot confer exercisable jurisdiction on the Bankruptcy Court by the adoption of the Emergency Rule. In reaching this conclusion there is considered: first, § 241(a) of the Bankruptcy Act of 1978 which the Supreme Court found wanting in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), hereinafter *Northern Pipeline;* second, the District Court decision, *Marathon Pipe Line Co. v. Northern Pipeline Construction Co.,* 12 B.R. 946 (Bkrtcy.D.C. Minn.1981), from which *Northern Pipeline* arose, hereinafter District Court case; third, *Northern Pipeline;* and fourth, the Emergency Rule.

## § 241(a) OF THE BANKRUPTCY ACT OF 1978

Although § 241(a) of the Bankruptcy Act adds many Code sections to the United States Code, the critical Code section that the Supreme Court found wanting in *Northern Pipeline* is 28 U.S.C. § 1471. This section is as follows:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall *exercise* [emphasis added] all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

It is to be noted that this section is unlike any other section in the United States Code. In the plurality opinion in *Northern Pipeline,* 102 S.Ct. p. 2880, it states that the construction of the Code section

". . . presents an unprecedented question of interpretation of Article III" [of the United States Constitution].

This Court knows of no section in the United States Code that vests jurisdiction in district courts but provides that another court "exercise all of the jurisdiction conferred on the district courts." It is readily apparent from § 1471 that (a) and (b) vests jurisdiction in the district court but (c) provides for the *exercise* by the bankruptcy court of all that jurisdiction conferred in (a) and (b) on the district court. Stated another way, (a) vests the district court with jurisdiction of cases, and (b) vests the district court with jurisdiction of proceedings, but (c) prohibits the district court from the exercise of that jurisdiction and places the exercise of all jurisdiction in (a) and (b) in the bankruptcy court. So the ultimate inquiry is not where jurisdiction is vested but the ultimate inquiry is who exercises that jurisdiction. For this reason the term "exercisable jurisdiction" is sometimes used herein.

## THE DISTRICT COURT CASE

In the District Court case at page 947 appears the following:

"This Court holds that 28 U.S.C. § 1471 is an unconstitutional delegation of Article III judicial power to nontenured judges."

In the District Court case at page 948 after discussing 28 U.S.C. § 1471(a) and (b) states:

"Nevertheless, the ultimate repository of this jurisdiction is not the federal district court."

The District Court case immediately following says:

"28 U.S.C. § 1471(c) assigns the jurisdiction granted to the district courts by subsections (a) and (b) to the bankruptcy courts. This assignment or transfer of jurisdiction from the district courts to the bankruptcy courts is mandatory, as the bankruptcy courts 'shall exercise all the jurisdiction [so] conferred.' Thus, the statutory scheme is constructed in such a manner as to remove with one hand what was just previously bestowed by the other.[4]"

N. 4 refers to this as "legislative sleight-of-hand." The District Court case goes on to quote from the legislative history and concludes that the scope of the jurisdiction given to bankruptcy judges "is amazingly broad as it encompasses claims based on both federal and state law." At page 949 the District Court opinion states:

"It is evident that 28 U.S.C. § 1471(b) and its transition counterpart extend to the new courts of bankruptcy a grant of jurisdiction that will equal, and in some instances exceed the jurisdiction of the federal district courts.[7]"

The "transition counterpart" is identified in n. 5 of the District Court case as Pub.L. 95–598, Title IV § 405 (1978).

It is to be noted that the District Court case treats bankruptcy courts as Article I courts, but *Northern Pipeline* says 102 S.Ct. at page 2867:

"Congress did not constitute the bankruptcy courts as legislative courts.[13]"

*Northern Pipeline,* n. 13, indicates that the bankruptcy court was created as an adjunct to the district court and that neither House of Congress concluded that the bankruptcy courts should be established as independent legislative courts.

It might be well to note here also that the term "adjunct" appears only in the 1978 Bankruptcy Act in § 201 which adds to Title 28 § 151, but § 201 does not become effective until 1984. Until 1984, § 404 of the Bankruptcy Act of 1978 makes the bankruptcy court "a separate department of the district court." The United States Supreme Court in *Northern Pipeline* made no distinction between "a separate department" during the transition period and an "adjunct" in 1984. Accordingly, the two must be treated as synonymous; otherwise, *Northern Pipeline* would not be effective until 1984.

In the District Court opinion at page 949 the powers of the bankruptcy court are discussed with the conclusion that:

"Except for the inability to enjoin another court and the limitation over certain kinds of criminal contempt, the bankruptcy court is endowed with the full array of judicial powers."

At page 950 the District Court case identifies bankruptcy courts as courts of original jurisdiction after having shown by § 1471, the legislative history, etc., that the ultimate repository of jurisdiction is not in the federal district court and that the only exercisable jurisdiction is in the bankruptcy court.

At page 955 of the District Court case reference is made to "a wholesale transfer of Article III court jurisdiction" and further that "bankruptcy courts" powers are not significantly different than those of the district court."

From the foregoing and careful reading of the District Court case it is clear that Judge Lord concluded that Congress, in bankruptcy cases, placed all exercisable jurisdiction in the bankruptcy courts and that "Title 28 U.S.C. § 1471 cannot be sustained as a valid exercise of Congress' power under Art. I, § 8, cl. 4 to establish a uniform bankruptcy law," p. 956. The case did not distinguish between "public rights" and "private rights," it held the whole of 28 U.S.C. § 1471 as unconstitutional and was affirmed in *Northern Pipeline.*

## NORTHERN PIPELINE

The controlling, if not only, majority holding in *Northern Pipeline* appears as follows in the concurrence in the judgment opinion 102 S.Ct. at page 2882:

"Because I agree with the plurality that this grant of authority [§ 241(a) of the Bankruptcy Act of 1978] is not readily severable from the remaining grant of

authority to Bankruptcy Courts under § 241(a), see *ante,* [102 S.Ct.] at 2880 n. 40, I concur in the judgment."

Four of the Justices in the plurality opinion held that the broad grant of jurisdiction to bankruptcy courts contained in § 241(a) is unconstitutional, 102 S.Ct. p. 2880. Three of the Justices, including the Chief Justice, concluded that all of § 241(a) was constitutional. Two Justices concurring in the judgment held:

> ". . . so much of the Bankruptcy Act of 1978 to entertain and decide *Northern's* lawsuit over Marathon's objection to be violative of Article III of the U.S. Constitution." 102 S.Ct. P. 2882.

The two Justices concurring in the judgment held that the Court should await the exercise of authority by a bankruptcy court not included within the facts of the case before it. At this point there is still no majority holding; four unconstitutional, three constitutional, and two partly unconstitutional. However, because the two Justices concurring in the judgment found that the grant of authority in § 241(a) was "not readily severable from the remaining grant of authority," they concurred in the judgment. "Not readily severable" was thus the controlling majority holding in the case.

Now, what was the judgment? The judgment in the plurality opinion is "the judgment of the district court is affirmed." Because the Justices concurring in the judgment could not readily sever the valid grants of authority in § 241(a) from the invalid grants of authority, they concurred in the affirmance of the district court judgment, and the district court judgment was that 28 U.S.C. § 1471 is unconstitutional.

In addition to joining in the dissent, the Chief Justice wrote separately stating that "the Court does *not* hold today that Congress' broad grant of jurisdiction to the new bankruptcy courts is generally inconsistent with Article III of the Constitution." P. 2882. This is true because there was no majority holding that the jurisdiction to bankruptcy courts contained in § 241(a) is unconstitutional. The Chief Justice says,

"Rather, the court's holding is limited to the proposition stated by Justice REHN-QUIST in his concurrence in the judgment—that a 'traditional' state common-law action, not made subject to a federal rule of decision, and related only peripherally to an adjudication of bankruptcy under federal law, must, absent the consent of the litigants, be heard by an 'Article III court' if it is to be heard by any court or agency of the United States", 102 S.Ct. p. 2882.

Apparently, it is the Chief Justice's opinion that because the plurality held all of § 241(a) unconstitutional and Justice Rehnquist held only a portion of § 241(a) unconstitutional, that the greater includes the lesser, and, accordingly, six Justices have held only that traditional state common-law actions are beyond the jurisdiction of the bankruptcy court. The Chief Justice does not address the severability question but goes on to say:

> "It will not be necessary for Congress in order to meet the requirements of the Court's holding, to undertake a radical restructuring of the present system of bankruptcy adjudication. The problems arising from today's judgment can be resolved simply by providing that ancillary common-law actions, such as the one involved in this case, be routed to the United States district court of which the bankruptcy court is an adjunct." 102 S.Ct. P. 2882.

Implicit in this statement is a recognition that the majority holds that it is Congress that must do the severing and restructuring but not so radical a restructuring as anticipated by the majority. This is apparently a statement as to how Congress might avoid "a radical restructuring of the present system of bankruptcy adjudication." N. 40 of the plurality opinion states:

> "We think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Article III, in the way that will best effectuate the legislative purpose." 102 S.Ct. P. 2880.

**280**

The opinion concurring in the judgment agrees with the plurality's n. 40. The fact that the various types of actions are not readily severable is the turning point in *Northern Pipeline.* The only majority holding is that the various types of actions placed within the jurisdiction of the bankruptcy courts by § 241(a) are not readily severable and that it is for Congress to decide what, if any, actions should be heard by bankruptcy judges.

As in the District Court case, in *Northern Pipeline* there is nothing to indicate that any of the Justices construe § 241(a) to place exercisable jurisdiction in any court but the bankruptcy court. In *Northern Pipeline* the ultimate repository of all exercisable jurisdiction is in the bankruptcy court. In *Northern Pipeline* in the plurality opinion 102 S.Ct. at p. 2879 it says:

> "In short, the 'adjunct' bankruptcy courts created by the Act *exercise jurisdiction* behind the *facade* of a grant to the district courts, and are exercising powers far greater than those lodged in the adjuncts approved in either *Crowell* [*v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598] or [*United States v.*] *Raddatz* [447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424]." [Emphasis added].

It was this "facade" that in the District Court case was referred to as legislative sleight-of-hand. As in the District Court case, in *Northern Pipeline* the tenor of the writing of all of the Justices is that the exercisable jurisdiction given to bankruptcy judges by § 241(a) is equal to, if not greater than, the jurisdiction exercised by district court judges. All of the justices wrote with the apparent understanding that no exercisable jurisdiction remained with the district court judges.

## PROCEDURE

It is procedural law not substantive law that is at issue in *Northern Pipeline.* The substantive law is in Title I of the Bankruptcy Act of 1978. It is the procedural aspects of Title II in § 241(a) that the Supreme Court dealt with in *Northern Pipeline,* that is, the procedure enacted by Congress. The second and third sentences of Division I–A of the plurality opinion are:

"The Bankruptcy Act of 1978 (Act)[1] made significant changes in both the substantive and procedural law of bankruptcy. It is changes in the latter that are at issue in this case." 102 S.Ct. P. 2862.

Congress, under U.S. Const. art. I, § 8, cl. 4, has the authority to establish ". . . uniform laws upon the subject of bankruptcy throughout the United States." Clause 18 of the same section gives Congress the power to ". . . make all laws which shall be necessary and proper for carrying into execution the foregoing powers . . . ." This latter is commonly called the necessary and proper clause. Clause 4 would appear to provide for establishing substantive law and Clause 18 to provide for making procedural law to make effective the substantive law. Of course, as found in *Northern Pipeline,* the procedural law cannot be contrary to Article III of the Constitution. The procedural law enacted by Congress in § 241(a) of the Bankruptcy Act of 1978 conflicted with Article III of the Constitution so held four Justices with two Justices holding that only in the facts before the Court was there a conflict with Article III, but these six Justices found that they could not readily sever the conflicting from the nonconflicting portions of Article III and allowed Congress six months to restructure "the Bankruptcy Act of 1978 to conform to the requirements of Article III in the way that would best effectuate the legislative Purpose", n. 40, and further stayed the Court's judgment during this six months to allow Congress to act.

The necessary and proper clause authorizes the Congress to fix a given method or procedure for obtaining a desired result to effectuate the substantive law enacted by Congress. *See Atkins v. U.S.,* 556 F.2d 1028, 1061 (1977), *cert. denied,* 434 U.S. 1009, 98 S.Ct. 718, 59 L.Ed.2d 751. During the six months time ending with December 24, 1982, Congress has failed to enact a given method or procedure to effectuate the substantive bankruptcy law.

## THE EMERGENCY RULE

The first item promulgated by the District Court dated September 30, 1982 in

response to the Supreme Court case was entitled "Local Rule Referring all Bankruptcy Proceedings to the Bankruptcy Judges of this Court." When the Supreme Court extended its stay until December 24, 1982, another item dated December 23, 1982 was entered by the District Court entitled "In re: Authority of Bankruptcy Judges to Act in Bankruptcy Cases." This latter item from the outset is identified as an Emergency Resolution, not a rule, and it is not identified as a rule except in the last paragraph. Whether it is a resolution or a rule, it will be dealt with and called herein the Emergency Rule.

The bankruptcy courts are now in a state of chaos. There is an impairment of the administration of the bankruptcy laws envisioned by the plurality opinion and the two Justices concurring in the judgment. In an effort to avoid or lessen this chaos and impairment the upper echelons of the judicial system have promulgated an Emergency Rule. This Emergency Rule, however, cannot be substituted for congressional action required by *Northern Pipeline* and the necessary and proper clause of the United States Constitution. Congress has enacted the substantive law, but the essential procedural law which it enacted was held unconstitutional in *Northern Pipeline*. Although Congress provided procedure by a method it erroneously thought constitutional, there now remains only substantive law, and there is a void as to procedural law. The Emergency Rule attempts to sever that which six Justices found to be unseverable. The Emergency Rule endeavors to do what six Justices said only Congress can do. The Emergency Rule is itself unconstitutional as the same is an exercise of authority not reposed in the District Court. Both *Northern Pipeline* and the United States Constitution say such authority is reposed only in Congress. If this is not so, there was no reason for the Supreme Court to use the seldom invoked right to stay its judgment for a period of six months. By staying its judgment an opportunity was afforded to Congress to prevent the present chaos and impairment of the administration of the bankruptcy laws. Congress has failed to

act and there is no exercisable jurisdiction in the district courts or the bankruptcy courts.

The Emergency Rule is invalid because, as shown above, the district courts were never vested with any exercisable jurisdiction, and, accordingly, have no jurisdiction to adopt the Emergency Rule. As shown above, 28 U.S.C. § 1471(c) has removed any exercisable jurisdiction from the district courts. Further, the District Court case, p. 948, and *Northern Pipeline* each held that the ultimate repository of jurisdiction was not in the federal district court but in the bankruptcy court and the former referred to the bankruptcy court as a court of original jurisdiction. Further, the Supreme Court affirmed the District Court judgment, and in neither case is there any recognition of original exercisable jurisdiction in the district courts.

There being no exercisable jurisdiction in the district court, there is no authority vested in the district court to adopt the Emergency Rule for the administration of bankruptcy cases in a bankruptcy court, the latter being the ultimate repository of all jurisdiction. Prior to *Northern Pipeline*, no valid argument could have been made that the district court had authority to, in effect, by a blanket rule, appoint bankruptcy judges, in essence, as special masters. This being so and there being no reverter clauses in the Bankruptcy Act of 1978 or in *Northern Pipeline*, no valid argument can be made subsequent to *Northern Pipeline* that the district courts can make a rule of procedure of the nature and content in the Emergency Rule.

The first phrases in the Emergency Rule are as follows:

"The purpose of this rule is to supplement existing law and all rules heretofore adopted in respect to the *authority* of the bankruptcy judges ..." [Emphasis added].

In substance, there is no distinction between "authority" as used in the rule and "jurisdiction" as used in *Northern Pipeline*. Had *Northern Pipeline* in the plurality

opinion used "authority" in place of "jurisdiction" in saying "Having concluded that the broad grant of jurisdiction to the bankruptcy courts is unconstitutional," 102 S.Ct. page 2880, it could not be successfully contended that the Emergency Rule has any validity. The word "authority" is, in fact, used in the concurrence in the judgment opinion 102 S.Ct. at page 2882—"Because I agree with the plurality that this grant of *authority* is not readily severable—" (emphasis added).

The rule does not identify the existing law or rules that are to be supplemented. Substantive law, of course, is not the existing law referred to but must be procedural law; and as shown above, both the Supreme Court case and the Constitution require that only Congress has the authority to act on this procedural issue in restructuring the bankruptcy courts.

The next phrases acknowledge that it is Congress who is to enact appropriate remedial legislation in response to *Northern Pipeline.*

Next in the Emergency Rule there is a finding of the existence of "exceptional circumstances," and these are listed. The use of the words exceptional circumstances are similar words as those in FRCP 53 in the appointment of special masters and in FRCP 53(b),

> "A reference to a master shall be the exception and not the rule."

Assuming exercisable jurisdiction, if it is the intent of the Emergency Rule to make the bankruptcy judges special masters, it cannot be done by a blanket emergency rule as the rule requires that special circumstances be found in each individual case.

> "Under all of the circumstances, we believe the Court of Appeals was justified in finding the orders of reference were an abuse of the petitioner's power under Rule 53(b). They amounted to little less than an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation.

> The use of masters is 'to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause,' *Ex parte Peterson,* 1920, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919, and not to displace the court." *La Buy v. Howes Leather Co.,* 352 U.S. 249, 256, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957).

But, none of the special circumstances stated are such as to give authority to bankruptcy judges to act in bankruptcy cases. The first, the unconstitutionality of § 241(a) of the Bankruptcy Act of 1978 was a circumstance which was to be resolved only by Congress in restructuring the Bankruptcy Act of 1978 and, thus, the six month stay of judgment. The second exceptional circumstance is the intent of Congress to refer bankruptcy matters to bankruptcy judges, and this is the specific circumstance that the Supreme Court found to be unseverable and, therefore, unconstitutional. The third circumstance is expertise of the bankruptcy judges. The fourth circumstance, the administrative difficulty of the district courts' assuming the existing bankruptcy caseload, presumes an assumption of a caseload that Congress has never delegated to the district court.

Subdivision (b) of the Emergency Rule begins "The bankruptcy court constituted by § 404 of Public Law 95–598" is a misstatement. Section 404(a) *continues,* not constitutes, bankruptcy courts through March 31, 1984 "for the purposes of this [1978] Act and the amendments made by this [1978] Act." It was one of these amendments, § 241(a), that *Northern Pipeline* found to be procedurally unconstitutional. The creation of bankruptcy courts is in § 201(a) of the Bankruptcy Act of 1978 by the insertion of Chapter 6, Title 28, of the United States Code. It is true that § 201 does not take effect until 1984, but § 405(b) provides that, pursuant to § 405(a), the exercisable jurisdiction in § 241(a) is to be exercised by the United States bankruptcy judges during transition. The referee in bankruptcy on the effective date of the 1978 legislation (October 1, 1979) was to have the title of United States bankruptcy judge. *See 1 Collier on Bankruptcy,* § 7.04[2] at 7–32 (15th ed. 1979) where it says,

"It is plain, in light of all of the legislative history on both the House side of the Congress and on the Senate side, as well, that it was intended that the referee in bankruptcy on the effective date of the 1978 legislation and through the end of transition was to have the title of United States bankruptcy judge and was to serve in the court of bankruptcy continued by section 404(a) but with virtually all of the powers of the post-transition Presidentially appointed judge.[12]"

Paragraph (c) of the Emergency Rule is entitled "Reference to Bankruptcy Judges." § 405(a)(1) of the Bankruptcy Act of 1978 already refers all cases to the bankruptcy judges. § 405(a)(1) is as follows:

"(1) All cases commenced under title 11 of the United States Code during the transition period shall be *referred* [emphasis added] to the United States bankruptcy judges. The United States bankruptcy judges may *exercise* [emphasis added] in such cases the jurisdiction and powers conferred by subsection (b) of this section on the courts of bankruptcy continued by section 404(a) of this Act, and all proceedings in such cases shall be before the United States bankruptcy judges, except—

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment; or

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge."

The above quoted § 405(a)(1) of the Bankruptcy Act of 1978 is effective during transition (it is in Title IV entitled "Transition"). In the first sentence all cases are referred to bankruptcy judges. Thus, the reference to bankruptcy judges in the Emergency Rule is redundant as Bankruptcy Rule 102 also already provides for that reference. The second sentence of § 405(a)(1) provides that after the reference *all* jurisdiction (authority) is to be ex-*ercised* by the bankruptcy judge. (The word "may" exercise in § 405(a)(1) is to allow for abstention in 28 U.S.C. § 1471(d)).

The assertion is made that even if 241(a) of the Bankruptcy Act of 1978 is unconstitutional and no exercisable jurisdiction remains in the district courts, then there is residual jurisdiction in the district courts by reason of 28 U.S.C. § 1334. However, the enactment of 28 U.S.C. § 1471(a), (b) and (c) supplants 28 U.S.C. § 1334. If this be not so, then both 28 U.S.C. § 1471(a), (b), (c), and 28 U.S.C. § 1334 have been viable since the effective date of the Act. Together they come as a package not "readily severable." If both are viable, then the not readily severable broad grant of jurisdiction to the bankruptcy courts is unconstitutional whether this jurisdiction comes to the bankruptcy courts "behind a facade" of grant of jurisdiction to district courts under 28 U.S.C. § 1471(a) and (b) or behind a facade of a rule of authority (jurisdiction) from district courts under 28 U.S.C. § 1334.

The second sentence of § 405(a)(1) provides for exercise of jurisdiction and powers conferred by subsection (b) on the courts of bankruptcy continued by § 404(a) of the Act and all proceedings in the cases referred are to be before the United States bankruptcy judges with the minimal exceptions stated. This subsection in the first sentence refers all cases to bankruptcy judges during transition. The second sentence makes it clear that the courts of bankruptcy are continued, not constituted. The second sentence also makes it clear that all proceedings in the cases are to be before the United States bankruptcy judges.

The subsection (b) referred to in the above-quoted § 405(a)(1) provides for the exercise of jurisdiction and the amendments to Title 28 made by § 241(a) of the Bankruptcy Act of 1978. It was specifically this § 241(a) that the Supreme Court returned to Congress for restructuring. The Emergency Rule, therefore, is invalid as it endeavors to do the restructuring which only Congress is authorized to do. Again, it should be noted in this § 405(a)(1) that it is exercisable jurisdiction that is conferred on bankruptcy courts and it is not conferred upon the district courts. Construing

§ 405(a)(1) in conjunction with 28 U.S.C. § 1471, the latter having been held unconstitutional, it is clear that the cases referred to in 28 U.S.C. § 1471(a) are already referred to bankruptcy judges. The proceedings referred to in 28 U.S.C. § 1471(b) are to be only before bankruptcy judges during transition, and both § 405(a)(1) and 28 U.S.C. § 1471(c) provide that the exercisable jurisdiction is only in the bankruptcy judges. The only conclusion is that the district court in adopting the Emergency Rule has done precisely what the Supreme Court said that Congress did wrong and that only Congress can correct.

Paragraph (d) of the Emergency Rule entitled "Powers of Bankruptcy Judges" attempts to sever the constitutional powers of bankruptcy judges from the unconstitutional powers of bankruptcy judges. Six Justices in the Supreme Court case held that these powers were not "readily severable" by the Supreme Court, and this being so, it would follow that neither the Judicial Conference, the Administrative Office of the United States Courts, or district courts at the direction of the Councils of the Circuit Courts of Appeals can constitutionally do such severing.

It is contended that old U.S.C. § 1334 continues to vest some bankruptcy jurisdiction in the district courts because new 28 U.S.C. § 1334 is not effective until 1984 because § 238 of the 1978 Bankruptcy Act is not included in the effective dates in § 402(b) and (c) of the 1978 Bankruptcy Act. This overlooks § 402(a) which is "Except as otherwise provided in this title [Title IV-Transition], this Act shall take effect on October 1, 1979." The effective date of new 28 U.S.C. § 1334 is "otherwise provided" in § 405(c)(2) as follows:

"During the transition period [beginning October 1, 1979], the jurisdiction of the district courts, the courts of appeals, and panels of bankruptcy judges to hear appeals shall be the same as the jurisdiction of such courts and panels granted under the amendments made by sections 236, 237, 238, and 241 of this Act to hear appeals from the judgments, orders, and decrees of the bankruptcy courts established under section 201 of this Act."

The effective date of new 28 U.S.C. § 1334 is thus made effective on October 1, 1979, the beginning of the transition period, just as effectively as if it had been listed in § 402(c). §§ 236, 237, 238, and 241 all are related to appeals. § 405(c)(1) provides the appellate tribunals to which appeals should go during transition, and § 405(c)(2) provides the jurisdiction to those appellate tribunals. Having provided jurisdiction effective October 1, 1979 only for appeals in new 28 U.S.C. § 1334, the broader jurisdiction in old 28 U.S.C. § 1334 expired with the commencement of the transition period on October 1, 1979. *See In re International Horizons, Inc.*, 689 F.2d 996, 1000, Note 5 (11th Cir.1982) where it says,

"Section 405(c)(2) of the Bankruptcy Reform Act provides that 28 U.S.C. § 1334 is now in effect."

## CONCLUSION

From all of the foregoing, it must be concluded that no district or bankruptcy court has any exercisable jurisdiction in bankruptcy cases, matters, or proceedings after December 24, 1982.

There must be a combination of statute plus constitutional provision before there is valid jurisdiction in federal courts as stated in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 372, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1978);

"For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by Acts of Congress. *Palmore v. United States*, 411 U.S. 389, 401, 93 S.Ct. 1670, 1678, 36 L.Ed.2d 342; *Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339; *Kline v. Burke Constr. Co*, 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226; *Cary v. Curtis*, [44 U.S.] 3 How. 236, 245, 11 L.Ed. 576."

or as stated in *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 548–549 (5th Cir.1981);

"It is axiomatic that the jurisdiction of the federal courts is limited, with its scope defined by the Constitution and by statute. *American Fire & Casualty v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951); *In Re Carter*, 618 F.2d 1093, 1098 (5th Cir.1980), *cert. denied*, 450 U.S.

949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981); *see also, Maxwell v. First National Bank of Monroeville,* 638 F.2d 32 (5th Cir. 1981).... Thus, the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."

or as stated in *Ruiz v. Estelle,* 679 F.2d 1115, 1157 (5th Cir.1982);

"Federal courts are necessarily confined to the limited jurisdiction granted by article III and by act of Congress.[211]"

Footnote 211 cites the following:

"*E.g., Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 372, 98 S.Ct. 2396, 2401, 57 L.Ed. 274, 281 (1978); *B., Inc. v. Miller Brewing Co.* 663 F.2d 545, 548 (5th Cir.1981)."

There is no combination of statute plus constitutional provision granting any jurisdiction (authority) to the district courts or the bankruptcy courts.

As to Article III of the Constitution, *Northern Pipeline* held that the broad grant of authority to bankruptcy judges was not readily severable, and, accordingly, did not comport with Article III. As to Acts of Congress, Congress effectively removed all exercisable jurisdiction from the district courts. There being no exercisable jurisdiction in the district courts or the bankruptcy courts, there has been a jurisdictional void subsequent to December 24, 1982.

The Emergency Rule attempts to extend (create) jurisdiction (authority) by rule contrary to *Sibbach v. Wilson & Co.,* 312 U.S. 1, 10, 61 S.Ct. 422, 424–425, 85 L.Ed. 479 (1941) where it says:

"Congress has undoubted power to regulate the practice and procedure of federal courts,[6] and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes or Constitution of the United States;[7] ... There are other limitations upon the authority to prescribe rules ... for instance, the inability of a court, by rule, to extend or restrict the jurisdiction conferred by a statute.[9]"

There is no jurisdiction (authority) in the district courts or bankruptcy courts within the confines of Article III plus an Act of Congress. The Emergency Rule, likewise, goes beyond those confines. It is only for Congress to unsever the broad grant of jurisdiction (authority) it gave to bankruptcy courts. It cannot be done by the district courts.

As stated by the Supreme Court in *Snyder v. Harris,* 394 U.S. 332, 341–342, 89 S.Ct. 1053, 1059, 22 L.Ed.2d 319 (1969),

"If there is a present need to expand the jurisdiction of those courts, we cannot overlook the fact that the Constitution specifically vests that power in the Congress, not in the courts."

By Order and Judgment entered simultaneously herewith, the respective complaints are dismissed for lack of jurisdiction.