B–J'S LIQUORS, INC., Plaintiff,

v.

AMERICAN NATIONAL BANK AND TRUST COMPANY OF SOUTH BEND, Defendant.

B–J'S LIQUORS, INC., B–J's Liquors, Inc. d/b/a Kings Cellar, Plaintiff,

v.

AMERICAN NATIONAL BANK, Thomas P. Bergin, John L. Carey, Joseph F. Dillon, John M. Duggan, G. Walter Erickson, M.D., William H. Furry, Ralph F. Hay, Gene L. Palmer, Milton S. Ries, W.G. Gordon, George W. Weber, Lex B. Wilkinson, Richard W. Miller, Thomas Wilkinson and Jerome Kearns, Defendants.

Nos. S 82–469, S 83–77.

United States District Court, N.D. Indiana, South Bend Division.

May 20, 1983.

David Rosenthal, Lafayette, Ind., Anthony Kowals, David Matthews, South Bend, Ind., for plaintiff.

Thomas F. Lewis, Robert Mysliwiec, Robert J. Konopa, John E. Doran, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

The above causes of action, having been consolidated on April 4, 1983, are presently before the court for a determination whether this court possesses subject matter jurisdiction over the claims contained herein. Both cases ultimately stem, directly or indirectly, from voluntary petitions for corporate reorganization filed under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* Because of the tortuous histories of these cases, an outline of the events leading up to the present is in order.

Plaintiff-King's Cellar, Inc., was incorporated in May 1977, and operates a package liquor store in South Bend, Indiana. Plaintiff-B–J's Liquors, Inc., was incorporated in December 1977 and operates eight package liquor outlets, also in the South Bend area. On September 10, 1981, both corporations filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Indiana, South Bend Division. On the same date, B–J's Liquors, Inc., filed suit in St. Joseph Superior Court in South Bend, Indiana, against American National Bank and Trust Company of South Bend. In that state court action, plaintiff-B–J's Liquors, Inc., alleged that defendant-American National Bank's tortious acts caused severe financial hardships to the plaintiff and ultimately forced the plaintiff into bankruptcy court. On September 30, 1981, defendant-American National Bank removed the state court action to the bankruptcy court where the two petitions for reorganization under Chapter 11 were pending.

In the meantime, the two bankruptcy petitions had been consolidated by order of the bankruptcy court, and in August 1982 a plan of reorganization was approved. Under that plan, Robert C. Anderson, Inc., agreed to purchase all of the assets of B–J's Liquors, Inc., and King's Cellar, Inc.; one of those assets was the previously removed state court lawsuit against defendant-American National Bank, docketed in the bankruptcy court as Proceeding 81–3248, Bankruptcy No. 81–31017.

Prior to the approval of the reorganization plan, however, defendant-American National Bank filed a motion to dismiss the complaint in that lawsuit. On September 20, 1982 the bankruptcy court entered its decision by order, both granting and denying in part the defendant's motion to dismiss. Thereafter, on October 4, 1982, plaintiff-B–J's Liquors, Inc., d/b/a King's Cellar, filed its Nunc Pro Tunc Motion to Transfer Proceeding 81–3248, Bankruptcy No. 81–31017, to this court in light of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The bankruptcy court granted plaintiff's motion pursuant to 11 U.S.C. Rule 915(b) on October 8, 1982, and the case was docketed with this court on October 14, 1982 as *B–J's Liquors, Inc. v. American National Bank and Trust Company of South Bend,* S 82–469.

On February 23, 1983, B–J's Liquors, Inc., and B–J's Liquors, Inc., d/b/a King's Cellar filed a separate action in this court against the same American National Bank and Trust Company and fifteen of the Bank's individual officers and directors, docketed as cause number S 83–77. Subsequently, this court determined that both S 82–469 and S 83–77 involved common issues of law and fact, and ordered the two actions consolidated on April 4, 1983. On May 11, 1983 a hearing was held before this court in both of these cases, at the conclusion of which all pending motions were taken under advisement.

To say that this is a complicated matter involving novel questions of law and fact would be something of an understatement. In addition to the claims advanced by the

plaintiffs in both cases and the defendant's counterclaim in S 82–469, there are numerous motions concerning, *inter alia,* discovery disputes, procedural questions, and the status of Indiana law relating to the legal attachment of property. However, before this court can address any of the above there must first be a determination whether this court is vested with the requisite subject matter jurisdiction necessary to resolve these issues.

In its thorough opinion of September 20, 1982, the bankruptcy court listed the various allegations contained in the plaintiff's complaint as follows:

   a) the defendant seized plaintiff's deposits causing checks drawn on plaintiff's checking account to be returned for insufficient funds;

   b) the defendant wrongfully converted the deposits of the plaintiff to its own use thereby giving itself preferential treatment;

   c) the defendant declared all loans to plaintiff due and payable immediately in full and this declaration was unreasonable, unconscionable, made in bad faith maliciously, negligently, oppressively, willfully and wantonly, in reckless disregard of the rights, business and credit standing of the plaintiff;

   d) the defendant did scheme and conspire to deprive plaintiff of alternate sources of financing which acts constituted an unlawful and illegal restraint of commerce;

   e) the defendant did scheme and conspire to restrain trade to the effect that plaintiff was compelled to make deposits with defendant in order to maintain its financing arrangements with defendant and to seek financing only from defendant and such actions constituted a restraint on the free flow of commerce, the ability of plaintiff to obtain alternate sources of financing and the enjoyment of freedom to make deposits in an unrestricted manner;

   f) defendant, without reason or justification, did breach the terms of a commitment defendant has entered into to provide plaintiff with financing necessary for the operation of plaintiff's business;

   g) as a result of the fact that the defendant has unreasonably discriminated in the application of its lending practices among its various borrowers, plaintiff has been treated in a manner inconsistent with the treatment extended to other commercial clients;

   h) defendant tortiously interfered with business relationships of the plaintiff;

   i) defendant has committed a trade libel or slander against plaintiff causing injury and damage to plaintiff's business reputation and defaming plaintiff;

   j) defendant fraudulently induced plaintiff through representations, agreements and actions of its officers, agents and employees to maintain its banking relationships with defendant and to forego developing other sources of commercial financing, and plaintiff, to its damage and detriment, relied upon these representations, agreements and actions which were made intentionally and with knowledge of their falsity to induce plaintiff to act in reliance upon them to its detriment;

   k) defendant, in doing the acts alleged in the complaint, acted in a fraudulent, malicious, negligent, deceitful, willful, wanton, intentional, harmful, grossly negligent, bad faith manner;

   l) as a result of defendant's actions plaintiff has lost profits and suffered irreparable damage and will in the future in the sum of forty-five million dollars.

As can be seen from the above, the allegations set forth in plaintiff's complaint deal exclusively with questions of state tort and, perhaps, contract law. This point was acknowledged by the parties at the hearing of May 11, 1983, when both sides conceded that S 82–469 involves neither federal question jurisdiction under 28 U.S.C. § 1331, nor diversity jurisdiction under 28 U.S.C. § 1332. Thus, it is readily apparent that S 82–469 is presently before this court solely by virtue of the unique facts of this case,

i.e., it could not have been filed as an original action in this court as framed, nor could it have been removed directly from state court to federal district court under 28 U.S.C. § 1441. Therefore, this court is confronted with the question whether, under *Northern Pipeline,* this court possesses subject matter jurisdiction over plaintiff's claims and, if so, whether this court should exercise that jurisdiction.

■ *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), held, *inter alia,* that the broad delegation of jurisdiction granted bankruptcy judges under 28 U.S.C. § 1471 violates Article III of the Constitution of the United States. The critical question left unanswered by the Court was whether *all* of § 1471 was invalidated, or merely that portion expressly relating to the authority of the Article I bankruptcy judges, viz., § 1471(c).

28 U.S.C. § 1471 reads, in its entirety:

§ 1471. Jurisdiction

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case. Added Pub.L. 95–598, Title II, § 241(a), Nov. 6, 1978, 92 Stat. 2668.

If *Northern Pipeline* struck down all of § 1471, then it could reasonably be argued that *no* court, neither bankruptcy nor district courts, may exercise jurisdiction over bankruptcy proceedings unless and until Congress corrects the unconstitutional infirmities of § 1471. This is the position advanced by so-called "purists," i.e., academicians and legal scholars, who insist that Congress take up the Supreme Court's challenge to clarify § 1471. See, e.g., W. Norton, Jr., and R. Lieb, "The Aftermath of *Northern Pipeline:* Bankruptcy Jurisdiction under Local Court Rule," *Norton Bankruptcy Law and Practice* (Monograph, February 1983) and authorities cited therein. These same authorities maintain that the former 28 U.S.C. § 1334, which reads, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy[,]" was superseded by § 1471, thereby effectively depriving even the district courts of bankruptcy jurisdiction. *Id.*

Notwithstanding the above, the courts have fairly uniformly disregarded the drastic position advanced by the purists' arguments. Instead, they have adopted a pragmatic approach to bankruptcy jurisdiction, holding as follows: (1) only § 1471(c) and not any of the other portions of the statute, was invalidated in *Northern Pipeline;* (2) the district courts therefore retain ultimate bankruptcy authority under § 1471(a) and (b); and, (3) even if all of § 1471 was struck down by *Northern Pipeline,* 28 U.S.C. § 1334 was "revived" to cover any jurisdictional gaps. *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *In re Hansen,* 702 F.2d 728 (8th Cir.1983); *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir.1983); *Otero Mills, Inc. v. Security Bank & Trust,* 28 B.R. 386 (D.N.M.1983); *Moody v. Martin,* 27 B.R. 991 (W.D.Wis. 1983); *Color Craft Press, Ltd. v. Nation-*

wide Shopper Systems, Inc., 27 B.R. 962 (D.Utah 1983); *In Re Matlock Trailer Corp.,* 27 B.R. 318 (M.D.Tenn.1983); *In the Matter of Northern Point Partners,* 26 B.R. 860 (E.D.Mich.1983). *But see, In Re Williamson,* 28 B.R. 276 (Bkrtcy.M.D.Ga.1983).

The arguments advanced in support of this "pragmatic" approach are simple. Since the avowed purpose of *Northern Pipeline* was to invalidate an unconstitutional delegation of Article III authority to Article I judges, and only subsection (c) of § 1471 expressly seeks to do so, only subsection (c) is unconstitutional. If only subsection (c) is unconstitutional, it necessarily follows that the remaining subsections of § 1471 are valid. Subsections (a) and (b) vest bankruptcy jurisdiction in the district courts. Since subsections (a) and (b) are valid, the district courts "have original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1471(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11[,]" 28 U.S.C. § 1471(b).

In addition to the above, the "pragmatists" argue that, even assuming *arguendo* that all of § 1471 was declared unconstitutional under *Northern Pipeline,* 28 U.S.C. § 1334 would thereby be "revived" to vest the district courts with ultimate bankruptcy jurisdiction. This line of argument is analogous to the concept of dependent relative revocation under probate law. Thus, where a subsequently enacted modification to a will (read, statute) is later held to be invalid, the law will presume that the testator (read, Congress) would have intended the "revival" of the previous will (read, statute), viz., § 1334, rather than dying intestate (read, no bankruptcy jurisdiction anywhere).

This court finds itself in agreement with the "pragmatic" position set forth above. To hold otherwise would lead to virtual chaos in the realm of bankruptcy law. Just as nature abhors a vacuum, so the law abhors a gap in the jurisdiction of its courts to adjudicate disputes. While the position adopted by the so-called "pragmatists" may not rival in its subtlety the scholarly arguments advanced by its opponents, it must be remembered that the Anglo-Saxon legal tradition is and always has been oriented towards the pragmatic goal of problem solving. Hence Justice Holmes' famous quote, "The life of the law has not been logic: it has been experience." O. Holmes, The Common Law 1 (1881).

Since it is uncontroverted that this court's jurisdiction over S 82–469 is grounded neither on a federal question nor in diversity, the action must be remanded back to the state court. However, a caveat: because S 82–469 was properly removed to federal bankruptcy court under 28 U.S.C. §§ 1471, 1478, and then properly transferred to this court under 11 U.S.C. Rule 915(b), it cannot be remanded under 28 U.S.C. § 1447(c) as having been "improvidently removed." Rather, the case must be remanded pursuant to 28 U.S.C. § 1471(d) "in the interest of justice."

As for S 83–77, a careful review of the pleadings contained therein discloses that it is essentially a paraphrased version of the complaint in S 82–469, with the exception that the plaintiffs added as party-defendants fifteen individual officers and directors of defendant-American National Bank. As this court noted in its consolidation order of April 4, 1983, this case and S 82–469 involve common questions of law and fact. Thus, while this court is mindful that an action ought not be dismissed unless it appears beyond doubt that the plaintiff has alleged no set of facts upon which he would be entitled to relief, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the absence of a jurisdictional statement, coupled with the clearly state tort law claims presented in S 83–77, requires that S 83–77 be dismissed.

Accordingly, and for the reasons set forth above, S 82–469 is hereby REMANDED to St. Joseph Superior Court; S 83–77 is hereby DISMISSED. SO ORDERED.