In re GUARANTY CHEVROLET, a California corporation, d/b/a Mission Chevrolet, Debtor.

David L. BUCHBINDER, Trustee, Plaintiff,

v.

Clive A. INGREY et al., Defendants.

Bankruptcy No. 82–1519–K–11.
Adv. No. C83–1517–M–11.

United States District Court, S.D. California.

Oct. 27, 1983.

---

Vivien C. Fitzmaurice, Robert Johnston Parks, Fitzmaurice & Fitzmaurice, San Diego, Cal., for plaintiff.

John R. Neece, Asst. U.S. Atty., for intervenor U.S of America.

Timothy D. Kelley, Seltzer, Caplan, Wilkins & McMahon, John J. McCabe, Jr., San Diego, Cal., for defendants.

## ORDER RE CONSTITUTIONALITY OF *MARATHON* REFERENCE RULE

TURRENTINE, Chief Judge.

This matter comes before this court on certification by Bankruptcy Judge Meyers of the immediate need to review the constitutionality of the Interim Rule ("*Marathon* Reference Rule"), which governs the administration of the bankruptcy system, adopted by the United States District Court for the Southern District of California in General Order 279–B. This certification was made pursuant to §§ (e)(2)(A)(ii) and (e)(3) of the aforementioned Rule.

Fred Robbin is named as a defendant in a complaint brought by the trustee which seeks the recovery of assets alleged to have been diverted in fraud of the estate's creditors. There are 11 counts, 4 of which are substantive federal counts under Chapter 11 of the Bankruptcy Code. Defendant argues that neither this court nor the bankruptcy court has subject matter jurisdiction and that the adversary proceeding must therefore be dismissed pursuant to F.R.C.P. 12(b)(1). This court disagrees.

I.

This court has previously determined that the *Marathon* Reference Rule is constitutional, see *In Re Boileau*, 30 B.R. 795 (D.C. S.D.Cal.1983), but due to the brevity of its

previous opinion on the matter and the presence of new arguments, this court will set out more fully its reasons for upholding the validity of the Interim Rule.

■ Contrary to the defendant's belief, the jurisdiction of the United States District Courts was unaffected by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The only question addressed by the plurality opinion in that case was whether "the assignment by Congress to *bankruptcy* judges of the jurisdiction granted in . . . 28 U.S.C. § 1471 (1976 ed., Supp. III), violates Article III of the Constitution." 102 S.Ct. at 2862. Subsections (a) and (b) of § 1471 confer original jurisdiction on the district courts to decide all matters "arising in or related to cases under Title 11." Subsection (c) empowers the adjunct bankruptcy courts to exercise that same jurisdiction, and it was only this "single statutory grant of jurisdiction" to a "single non-Article III court" which the Supreme Court held unconstitutional in *Marathon.* 102 S.Ct. at 2880 n. 40. Since there was no majority in *Marathon,* the reach of the plurality's opinion is restricted by the concurring opinion of Justice Rehnquist, joined by Justice O'Connor. Justice Rehnquist concluded *only* that that part of § 1471(c) which enabled a bankruptcy court to decide a state law claim was unconstitutional, but that all of 1471(c) had to be invalidated because its offensive aspects could not be severed from its constitutional applications. 102 S.Ct. at 2882 (Rehnquist, J., concurring); see also ibid. (Burger, C.J., dissenting). Thus, the grant of bankruptcy jurisdiction to the district courts remains intact.

The effect of the *Marathon* decision has been interpreted in precisely this fashion by every Article III tribunal which has considered the question. These courts have all held that the district courts have subject matter jurisdiction to hear bankruptcy matters and related proceedings. See *Coastal Steel v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 199–201 (3d Cir.1983); *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 259–61 (6th Cir.1983); *In Re Hansen,* 702 F.2d 728, 729 (8th Cir.1983); *In Re Braniff Airways, Inc.,* 700 F.2d 214, 215 (5th Cir. 1983); *In Re Johns-Manville Corp.,* 31 B.R. 627, 628 (Bkrtcy.S.D.N.Y.1983); *Pettigrew v. Kutak, Rock & Huie,* 30 B.R. 989, 993–95 (D.C.N.D.Ga.1983); *In Re United Grocers Corp.,* 30 B.R. 46, 47, 48 (D.C.D.N.J.1983); *B–J's Liquors v. American Nat'l Bank & Trust Co.,* 29 B.R. 1011, 1015 (D.C.N.D.Ind. 1983); *In Re Lear Colorprint,* 29 B.R. 438, 439–40 (D.C.N.D.Ill.1983); *In Re Herrera,* 29 B.R. 49, 51 (D.C.D.Colo.1983); *In Re Q1 Corp.,* 28 B.R. 647, 651–53 (E.D.N.Y.1983); *Otero Mills, Inc. v. Security Bank & Trust,* 28 B.R. 386, 388 (D.C.D.N.M.1983); *Moody v. Martin,* 27 B.R. 991, 995–98 (Bkrtcy.W.D. Wis.1983); *In Re Color Craft Press, Ltd.,* 27 B.R. 962, 964–65 (D.C.D.Utah 1983); *In Re Matlock Trailer Corp.,* 27 B.R. 318, 323–25 (D.C.M.D.Tenn.1983); *In Re Northland Point Partners,* 26 B.R. 860, 861 (D.C.E.D. Mich.1983).

■ Since only 1471(c) runs afoul of the Constitution, the appropriate response is to sever it and enforce the remainder of the statute if "what is left is fully operative as a law." *Champlin Refining Co. v. Corporation Comm'n,* 286 U.S. 210, 234, 52 S.Ct. 559, 564, 76 L.Ed. 1062 (1932); accord, *Buckley v. Valeo,* 424 U.S. 1, 108, 96 S.Ct. 612, 677, 46 L.Ed.2d 659 (1976). The primary congressional intent behind the 1978 reforms in the bankruptcy laws was to eliminate the dichotomy between summary and plenary jurisdiction and hear all bankruptcy-related matters in a single federal forum. Senate Report No. 95–989, 95th Cong., 2d Sess. 17 (July 14, 1978), U.S.Code Cong. & Admin. News 1978, p. 5787. Given this and the unambiguous intention to make each section of the new law severable, House Report No. 95–595, 95th Cong., 1st Sess. 462 (September 8, 1977), U.S.Code Cong. & Admin.News 1978, p. 5787, it seems manifest that the proper course is to implement the remaining, valid sections—1471(a) and (b)— since they achieve the congressional objective by reposing all the necessary jurisdiction in the federal district courts. See, e.g., *In Re Q1 Corporation, supra* at 652–53; *In*

*Re Northland Point Partners, supra* at 861. Nothing short of chaos would result if, as defendant contends, *all* federal bankruptcy jurisdiction evaporated with *Marathon.* "The law disfavors chaos," *White Motor Corp. v. Citibank, N.A., supra* at 262, and this court will not leap at the opportunity to attribute to the national legislature the intent to produce such a jurisdictional vacuum.

## II.

The defendant argues that even if the assertion of jurisdiction over bankruptcy matters by the district courts is constitutionally unblemished, the rule by which such matters are referred to the bankruptcy courts is illegitimate. It is asserted that the promulgators of the *Marathon* Reference Rule usurped the constitutional prerogatives of the legislature and transgressed the separation and division of powers by attempting to do by rule what the Supreme Court said Congress may not do by statute.

■ Since their inception, the federal courts have had an obligation of the highest order to maintain an efficient and orderly process of resolving disputes arising under federal law. To enable the federal courts to fulfill this duty, Congress endowed the judicial councils with rule-making power. 28 U.S.C. § 332(d); see *In Re Imperial "400" National, Inc.,* 481 F.2d 41, 46 (3d Cir.1973). This authority must be broad enough to enable the judicial councils to execute their duty of "doing all and whatever [is] necessary of an administrative character to maintain efficiency and public confidence in the administration of justice." Id. at 46 (citation omitted). In managing the business of the federal courts, the judicial councils are charged with taking an active, not a passive role. Indeed, if the Judicial Councils of the Ninth and other Circuits had failed to promulgate the *Marathon* Reference Rule and stood idly by while the bankruptcy system disintegrated, they would have been guilty of dereliction of duty. *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 262–63 (6th Cir.1983).

■ Moreover, the promulgation of the Interim Rule is well within the inherent power of an Article III district court to dispose in an expeditious manner of judicial matters that come before it by prescribing rules for the conduct of business. See *White Motor Corp., supra,* 704 F.2d at 262–63; *In Re Boileau,* 30 B.R. 795, 796 (D.C.S. D.Cal.1983). Authority for the issuance of the Rule may also be found in the Bankruptcy Reform Act of 1978, 11 U.S.C. § 105, which gives courts of bankruptcy the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." See *White Motor Corp., supra,* 704 F.2d at 262, *In Re Boileau, supra,* 30 B.R. at 796; *2 Collier on Bankruptcy,* § 105.02 (15th ed. 1983).

■ Finally, defendant argues that even if the Rule was promulgated by a competent authority, it is nevertheless invalid because it was not issued in accordance with the requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b)(B). However, the APA does not apply to the federal courts. 5 U.S.C. § 551(1)(B); *In Re Fidelity Mortgage Investors,* 16 B.R. 477, 478 (D.C.S.D.N.Y.1981), affirmed 690 F.2d 35, 38–39 (2d Cir.1983).

## III.

Defendant's most novel argument relies on the recent decision by the Ninth Circuit Court of Appeals in *Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix,* 712 F.2d 1305 (9th Cir.1983). There the appellate panel held unconstitutional a provision of the Magistrates Act which allows magistrates, with the consent of the parties, to conduct civil trials and enter judgments. 28 U.S.C. § 636(c) (Supp. V 1981). Relying on *Marathon,* the court held that the requirement that federal judicial power be wielded only by judges with life tenure and salary protection could not be waived by the litigants, since it was dictated by the unambiguous language of Article III, and not by the 5th Amendment's Due Process Clause.

Defendant argues that *Pacemaker* sounds the death knell of the *Marathon* Reference Rule because section (d)(3)(B) of the Rule allows a bankruptcy judge to enter dispositive rulings and judgments in "related proceedings"—such as the one in issue—so long as all of the parties give their consent.

The deployment of the *Pacemaker* opinion as authority in this proceeding is problematic. In an order amending its original opinion, the *Pacemaker* panel declared that the decision would not apply to any case which had been referred to a magistrate prior to the date on which the mandate of *Pacemaker* finally issued. That mandate has not yet issued, since a petition for rehearing or rehearing en banc was timely filed, and such a petition automatically stays the mandate. Federal Rule of Appellate Procedure 41. Until there is a final decision, the rule of the law of the case does not even apply. *United States v. U.S. Smelting Co.*, 339 U.S. 186, 199, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950). In such a situation, this court hesitates to apply as dispositive authority an opinion which has yet to finally determine anything even in the case in which it was issued.

However, this court need not delve into the metaphysics of the authority of a non-final opinion, nor engage in a discussion of the caliber of its reasoning. For in the instant case the parties *never consented* to have their "related matter" decided by a non-Article III bankruptcy judge, so the consent clause of 279–B(d)(3)(B) is not even at issue. Therefore, defendant's challenge to a rule which is not properly before this court is premature. Contrary to the practice of some appellate panels, this court does not see its role as that of a roving ombudsman empowered to engage in constitutional search and destroy missions. This court prefers to follow two centuries of sound precedent and reach and decide only those issues necessary to the disposition of the case. See, e.g., *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936); *Northern Pipeline Construction Co. v. Marathon Pip? Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 2881, 73 L.Ed.2d 598 (1982) (Rehnquist, J., concurring).

## IV.

The bohemian notion that creativity is animated by disorder and that people of high originality are somehow lawless is persistent, but misguided. Truly creative acts, whether artistic, scientific, or legislative, are the work not of outlaws but of lawmakers. Every significant creative performance since the initial one, be it the Brandenburg Concerti, the theory of general relativity, or the *Marathon* Reference Rule, has been in some measure a bringing of order out of chaos. This court can find no basis in the law for invalidating the only rule which stands between 700,000 bankruptcy cases and anarchy.

ACCORDINGLY, IT IS ORDERED that defendant's motion to dismiss for want of subject matter jurisdiction is DENIED.

FURTHERMORE, IT IS ORDERED that defendant's motion to abstain is DENIED, intervention by the United States is ALLOWED, joinder by defendant Connole in defendant Robbin's motions is ALLOWED, and defendant's request that this order be certified for immediate appeal under 28 U.S.C. § 1292(b) is DENIED.