**In re SOUTH PORTLAND SHIPYARD and Marine Railways Corporation, Railway Marine Corporation, Debtors.**

Bankruptcy Nos. 182–00358, 182–00359.

United States Bankruptcy Court,
D. Maine.

June 29, 1983.

Daniel Amory, Drummond, Woodsum, Plimpton & MacMahon, P.A., Portland, Maine, for Peter Drivas.

George J. Marcus, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Maine, for NETS.

Robert Checkoway, Preti, Flaherty & Beliveau, Portland, Maine, for debtors.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

Each debtor involved in this proceeding filed a chapter 11 petition in November, 1982. Near East Technological Services, Ltd. (NETS) filed a proof of equity interest in each case on January 21, 1983, and on February 3, filed requests for hearings thereon. Peter Drivas, president of both debtors, filed motions to dismiss NETS' proofs of equity interest for, *inter alia,* lack of jurisdiction over the subject matter. These motions have been heard jointly.

Drivas contends that in light of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) neither this Court nor the United States District Court has jurisdiction to hear these proceedings. Drivas also argues that even assuming the District Court does have jurisdiction, the rule by which these cases were referred to the Bankruptcy Court (Rule 41, Local Rules of the District Court for the District of Maine) is invalid.

In *Northern Pipeline,* the Supreme Court held unconstitutional the grant of jurisdiction given bankruptcy courts by § 241(a) of the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471. The Court held that its decision is to apply only prospectively, and stayed its judgment first until October 4, and again until December 24, 1982. *Id.* at ——, 102 S.Ct. at 2880; *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982). Upon the expiration of the stay, District Court Rule 41 became effec-

tive.[1] That emergency rule purports to refer all bankruptcy matters to the bankruptcy judges of the district of Maine, subject to supervision by the district court.

Because the debtors filed their bankruptcy petitions prior to the expiration of the stay, this Court must first determine whether the *Northern Pipeline* decision is applicable to these proceedings. That decision applies prospectively from the date its judgment became effective, *i.e.,* December 25, 1982. It has been held that the decision applies only to *cases* filed after December 24, 1982, and that the bankruptcy court retains jurisdiction to hear all matters and proceedings, whenever they arise, in cases filed prior to December 25. *Walter E. Heller and Co., Southeast, Inc. v. Matlock Trailer Corp. (In re Matlock Trailer Corp.),* 27 B.R. 311, 10 B.C.D. 34 (Bkrtcy.M.D.Tenn.) *reversed* 27 B.R. 318, 10 B.C.D. 372 (M.D. Tenn.1983).

■ If the Supreme Court had failed to apply its decision prospectively, all orders entered by bankruptcy courts from the effective date of the new Bankruptcy Reform Act might possibly have been void. Prospective application appears to have been intended to protect final judgments entered prior to the date *Northern Pipeline* became effective. The cases cited by the Supreme Court on this point deal with the effect of a decision like *Northern Pipeline* on final orders or actions taken without challenge before the decision. *See White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *Still v. First Bank of Newton, Kansas (In re Jorges Carpet Mills, Inc.),* 27 B.R. 333, 335–36, 10 B.C.D. 1, 2 (Bkrtcy.E.D.Tenn.1983). It would be anomalous to permit a court without any subject matter jurisdiction nevertheless to exercise jurisdiction in selected proceedings. This Court finds that *Northern Pipeline's* holding applies to the proceedings here at issue. *See White Motor Corp.; Walter E. Heller and Co. Southeast, Inc. v. Matlock Trailer Corp. (In re Matlock Trailer Corp.),* 27 B.R. 318, 326, 10 B.C.D.

372, 376 (M.D.Tenn.1983); *Still v. First Bank of Newton, Kansas.*

In *Northern Pipeline,* the plurality "concluded that the broad grant of jurisdiction to the bankruptcy courts contained in § 241(a) [of the Bankruptcy Reform Act of 1978] is unconstitutional...." —— U.S. at ——, 102 S.Ct. at 2880; *see Massachusetts v. Dartmouth House Nursing Home, Inc. (In re Dartmouth House Nursing Home, Inc.),* 30 B.R. 56, 59, (Bkrtcy.App. 1st Cir. 1983) (Plurality in *Northern Pipeline* concluded that the "entire grant of jurisdiction to the bankruptcy courts under section 1471 must be held unconstitutional."). Thus, this Court may proceed with the matters before it only if (1) the district court has jurisdiction, and (2) Rule 41 validly empowers this Court to exercise the district court's jurisdiction.

## DISTRICT COURT JURISDICTION

■ NETS argues that the district court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1334, and 1471(a) and (b). The district court is a court of limited jurisdiction, and "the fair presumption is ... that a cause is without jurisdiction till the contrary appears." *Turner v. Bank of North America,* 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799) (quoted in *Gillman v. Preston Family Investment Co. (In re Richardson),* 27 B.R. 407, 419, 10 B.C.D. 39, 47 (Bkrtcy.D.Utah)) *vacated sub nom. Color Craft Press Ltd. v. Nationwide Shopper Systems, Inc. (In re Color Craft Press, Ltd.),* 27 B.R. 962, 10 B.C.D. 182 (D.Utah 1983). "[T]herefore, when the inquiry involves the jurisdiction of a federal court, 'the presumption in every stage of a cause [is] that it is without the jurisdiction of a court of the United States.'" *Gillman,* 27 B.R. at 419, 10 B.C.D. at 47 (quoting *Lehigh Mining & Manufacturing Co. v. Kelly,* 160 U.S. 327, 337, 16 S.Ct. 307, 311, 40 L.Ed. 444 (1895)); *In re Seven Springs Apartments,* 10 B.C.D. 634, 639–40 (Bkrtcy.N.D.Ga.1983).

Title 28 U.S.C. § 1471 states:

---

**1.** Rule 41 was adopted in compliance with an order of the Judicial Council for the First Circuit, dated December 22, 1982.

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

(e) The bankruptcy court in which a case under title 11 is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.

While this statute appears to initially vest jurisdiction in the district courts, it further mandates that the bankruptcy courts "*shall exercise all* of the jurisdiction conferred by this section on the district courts." (Emphasis added). As the Supreme Court noted, "the ultimate repository of the Act's broad jurisdictional grant is the bankruptcy courts." *Northern Pipeline,* —— U.S. at —— n. 3, 102 S.Ct. at 2862 n. 3. "Subsections (a) and (b) of 28 U.S.C. § 1471 were designed by Congress to ensure the constitutionality of the grant of exclusive jurisdiction to bankruptcy courts by making them adjuncts of the district courts.... There appears no indication that Congress intended that the district courts have expanded jurisdiction to hear new kinds of proceedings." *Chamberlain Livestock Auction, Inc. v. Aberdeen Production Credit Ass'n,* 22 B.R. 750, 751, 9 B.C.D. 783, 784 (D.S.D.1982). To the contrary, *Northern Pipeline* characterizes the grant of jurisdiction to the district courts as a "facade". —— U.S. at ——, 102 S.Ct. at 2879. As the Supreme Court has observed, the usually accepted meaning of "jurisdiction" is the power to act judicially—"when the court has jurisdiction, it has power to decide the case brought before it...." *Industrial Addition Association v. Commissioner,* 323 U.S. 310, 313, 65 S.Ct. 289, 291, 89 L.Ed. 260 (1945); *Employers Reinsurance Corp. v. Bryant,* 299 U.S. 374, 381 n. 10, 57 S.Ct. 273, 276 n. 10, 81 L.Ed. 289 (1937) ("Jurisdiction is the right to put the wheels of justice in motion and to proceed to the final determination of a cause...."); *Iselin v. LaCoste,* 147 F.2d 791, 795 (5th Cir.1945) ("Jurisdiction is the power to adjudicate and is granted by Congress."); *Walling v. Miller,* 138 F.2d 629, 632 (8th Cir.1943) *quoting General Inv. Co. v. New York Central R.R.,* 271 U.S. 228, 230, 46 S.Ct. 496, 497, 70 L.Ed. 920 ("By jurisdiction we mean power to entertain the suit, consider the merits and render a binding decision...."); *see State v. True,* 330 A.2d 787, 789 (Me.1975) ("Jurisdiction of the court means the authority of the court to decide a particular case...."). It is the bankruptcy courts which are directed to *exercise* the jurisdiction conferred by section 1471, *i.e.,* it is the bankruptcy courts which are given the power to act judicially. Jurisdiction without the power to act is no jurisdiction at all—*Northern Pipeline* did not "cure" a previously paralyzed district court, permitting that court to miraculously exercise its immobile bankruptcy muscles. *Northern Pipeline* instead demolished the facade of district court jurisdiction, thereby exposing the bankruptcy court as the actual recipient of section 1471 jurisdiction. *See* Countryman, *Emergency Rule Compounds Emergency,* 57 Am.Bankr.L.J. 1, 6 (1983).

There is no doubt that Congress intended section 1471 to place the power to act exclusively in the bankruptcy courts. The House of Representatives initially proposed an independent bankruptcy court. It rejected assigning cases or proceedings to the district courts for several reasons:

The district courts are generally overburdened. Their caseload has increased dramatically in recent years without a corresponding increase in the number of judges. Though a judgeship bill is presently pending in both Houses of Congress, the increased number of district judges proposed in those bills probably would be inadequate to absorb the bankruptcy caseload.

Second, the Speedy Trial Act requires that criminal matters be given precedence on the district court calendars. The Constitution does not require a "speedy trial" for bankruptcy matters as it does for criminal cases. Thus, criminal matters would continue to be accorded priority. However, the nature of bankruptcy is such that it, too, for practical reasons, requires expeditious disposition. The original Bankruptcy Act in 1898 left many matters to the State courts for disposition because often they were speedier forums than the bankruptcy courts. Today, however, the State courts are seriously overburdened, although the bankruptcy courts are nearly current with their dockets. Such delays as there are in bankruptcy cases often result from the need for a matter to proceed to decision in a State court. H.R. 8200 does much to alleviate the problem, but the change proposed would be to little avail if bankruptcy disputes were required to fight the judicial logjam caused by the Speedy Trial Act and by the volume of litigation pending in district courts. Assets would deteriorate; creditors would be delayed in recovering money to which they are justly entitled; and, to use the familiar medical metaphor, in business reorganization cases, the patient would die on the operating table while diagnosis slowly proceeded.

Third, assignment of bankruptcy disputes to the district judges would be generally unacceptable because district judges have long made clear their lack of interest in bankruptcy matters. In 1959, the Judicial Conference recommended legislation that would remove one of the last remaining functions of the district judges in bankruptcy cases: making an order of reference. The law now requires automatic reference, and district judges no longer have any involvement in bankruptcy cases. More recently, the Judicial Conference has made known its lack of interest in bankruptcy cases by its recommendation that they continue to be handled by bankruptcy judges, and not by district judges.

Finally, a generalist judge that only occasionally handled bankruptcy cases would not have a sufficient understanding of the law and the fact situations that arise in bankruptcy cases. He would be unable to make the quick decisions that these cases so often require.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 14–15 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5975, 5976, *reprinted in* 2 app. *Collier on Bankruptcy* 14–15 (15th ed. 1982) (footnotes omitted). The Senate rejected the idea of an independent court, but agreed that jurisdiction should be exercised "exclusively by bankruptcy judges." S.Rep. No. 989, 95th Cong., 2d Sess. 16 (1978), *reprinted in* 3 app. *Collier on Bankruptcy* 16 (15th ed. 1982). "[A]ll civil actions and proceedings arising under or related to cases under title 11 are to be before the bankruptcy judge...." *Id.* at 18, U.S.Code Cong. & Admin.News 1978, p. 5804. The Senate bill "delegate[d] the exclusive exercise of ... jurisdiction at the trial level to bankruptcy judges." *Id.*, U.S.Code Cong. & Admin.News 1978, p. 5804. The Senate version was adopted and enacted as section 1471. *See Color Craft Press, Ltd. v. Nationwide Shopper Systems, Inc. (In re Color Craft Press, Ltd.),* 27 B.R. 392, 400–01, 10 B.C.D. 53, 58–59 (Bkrtcy.D.Utah) *vacated* 27 B.R. 962, 10 B.C.D. 182 (D.Utah 1983). Congress intended that the transitional bankruptcy courts exercise that jurisdiction to the exclusion of the district courts throughout the transition period. *In re Seven Springs Apartments,* 10 B.C.D. 634, 642–46 (Bkrtcy.N.D.Ga.1983).

In light of its belief that there was no time, expertise or inclination in the district courts to handle bankruptcy cases,

Congress vested jurisdiction completely and exclusively in the bankruptcy courts. *Color Craft,* 27 B.R. at 401–02, 10 B.C.D. at 58–59. Were this Court to sever § 1471(c) from subsections (a) and (b), holding that because *Northern Pipeline* declared the former unconstitutional, the latter now give the district court power to act, it would act contrary to the clearly expressed intent of Congress. *See Winters National Bank & Trust Co. of Dayton v. Schear Group (In re The Schear Realty & Investment Co., Inc.),* 25 B.R. 463, 469, 9 B.C.D. 1210, 1215 (Bkrtcy.S.D.Ohio 1982). Severance would be improper, for it would set up "a program quite different from the one the legislature actually adopted." *Sloan v. Lemon,* 413 U.S. 825, 834, 93 S.Ct. 2982, 2987, 37 L.Ed.2d 939 (1973).[2]

■  Several courts have upheld district court jurisdiction on the basis of, *inter alia,* 28 U.S.C. § 1334, which states:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy.

*See, e.g., First National Bank of Tekamah, Nebraska v. Hansen (In re Hansen),* 702 F.2d 728, 729 (8th Cir.1983); *White Motor Corp. v. Citibank, N.A.,* 704 F.2d 254, 260 (6th Cir.1983); *Braniff Airways, Inc. v. Civil Aeronautics Board (In re Braniff Airways, Inc.),* 700 F.2d 214, 215 (5th Cir.1983); *Color Craft Press, Ltd. v. Nationwide Shopper Systems, Inc. (In re Color Craft Press, Ltd.),* 27 B.R. 962, 964–65, 10 B.C.D. 182, 183 (D.Utah 1983). A new section 1334 giving district courts only *appellate* jurisdiction over bankruptcy court orders was enacted as part of the Bankruptcy Reform Act of 1978, Pub.L. 95–598 § 238(a) (hereinafter "Reform Act"). While this new provision technically does not become until April 1, 1984, the jurisdiction of the district courts during the transition period before that date "to hear appeals shall be the same as the jurisdiction ... granted under [new section 1334]." Reform Act § 405(c)(2). Thus, while old section 1334 will not be specifically repealed and replaced by new section 1334 until April 1, 1984, it is clear that Congress intended the district courts prior to that time to act as if new section 1334 was in effect.[3] *See International Ho-*

**2.** It should also be noted that in *Northern Pipeline,* the Court affirmed the *dismissal* of the case by the U.S. District Court. The district court held that section 1471 granted jurisdiction not to the district court, but to the bankruptcy court. *See Marathon Pipeline Co. v. Northern Pipeline Construction Co.,* 12 B.R. 946, 948 (D.Minn.1981). If the Supreme Court intended to strike down only section 1471(c), it would have remanded the case to the court with jurisdiction—the district court. *Still v. First Bank of Newton, Kansas (In re Jorges Carpet Mills, Inc.),* 28 B.R. 616, 617, 10 B.C.D. 547, 547 (Bkrtcy.E.D.Tenn.1983). There would appear to be no reason to single out *Northern Pipeline* for dismissal if all other cases pending before the bankruptcy courts upon the expiration of the stay were intended to be treated as then pending in district court. *Cf. In re Johnson County Gas Co., Inc.,* 30 B.R. 690, 703 (Bkrtcy.E.D.Ky.1983) (assuming district courts have jurisdiction, nobody has explained how that jurisdiction was "invoked by the filing of a bankruptcy case ... with the clerk of an entirely separate court, the court of bankruptcy."). Several courts have recognized that *Northern Pipeline* struck down the whole of section 1471, not merely section 1471(c). *See, e.g., In re United Grocers Corp.,* 29 B.R. 309, CCH Bank.L.Rep. ¶ 69,187 (Bkrtcy.D.N.J.1983);

*In re Johnson County Gas Co., Inc.,* 30 B.R. 690 (Bkrtcy.E.D.Ky.1983); *Williamson v. General Finance Co. of Georgia (In re Williamson),* 28 B.R. 276 (Bkrtcy.M.D.Ga.1983).

**3.** Under the Reform Act, the provision which establishes the United States bankruptcy courts, Pub.L. 95–598, § 201, does not become effective until April 1, 1984. Prior to that time, the "courts of bankruptcy" as defined in the repealed Bankruptcy Act of 1898 continue to be the "courts of bankruptcy" for the purposes of the Reform Act. *Id.* § 404(a). New section 1334, by its terms, addresses the jurisdiction of the district courts to hear appeals from "bankruptcy courts." Because there will not be any bankruptcy courts, technically speaking, until April 1, 1984, Congress deferred *enactment* of new section 1334 until that date, but provided that prior to April 1, 1984, the district courts would exercise appellate jurisdiction over the "courts of bankruptcy" continued by § 404(a) in the same manner as the district courts would exercise jurisdiction over the "bankruptcy courts" after April 1, 1984. This Court concludes that Congress intended the new section 1334 to supplant old section 1334 even during the transition period, and finds that old section 1334 was implicitly repealed.

*rizons, Inc. v. Committee of Unsecured Creditors (In re International Horizons, Inc.),* 689 F.2d 996, 1000 n. 5 (11th Cir.1982). Other courts have held that this unusual procedure was carefully adopted by Congress in order to provide insurance against a decision like *Northern Pipeline.* This Court finds it more plausible that if Congress intended old section 1334 to remain in effect during the transition period, *but see* n. 3, *supra,* it did so to protect cases commenced under the repealed Bankruptcy Act of 1898. Section 403 of the Reform Act provides that all matters and proceedings in or relating to cases commenced under the old Act shall be conducted and determined as if the Reform Act had not been enacted. It might be argued that to prevent possible jurisdictional disputes from arising in old Act cases that continue beyond the effective date of the new Reform Act of 1978, Congress kept old section 1334 in place to provide the same jurisdictional footing for old Act cases during the transition period as existed prior to enactment of the Reform Act. *See In re Wildman,* 10 B.C.D. 668, 683–84 (Bkrtcy.N.D.Ill.1983).

It appears most likely, however, that Congress intended neither of the above. Both assumptions seem unlikely in view of Congress' decision to repeal old section 1334 on April 1, 1984. (Why would Congress assume all old Act cases would be closed by that date? Alternatively, why would Congress allow its "insurance policy" to lapse on that date?). *See In re Conley,* 26 B.R. 885, 896 n. 10, 10 B.C.D. 10, 15 n. 10 (Bkrtcy. M.D.Tenn.1983). Moreover, to hold that old section 1334 was intended to give the district courts original jurisdiction over matters and proceedings in cases arising under the Reform Act would totally ignore Congress' clear intention to consolidate all bankruptcy proceedings in one forum. *See In re United Grocers Corp.,* 29 B.R. 309, CCH Bank.L.Rep. ¶ 69,187 at 82,342 (Bkrtcy.D.N. J.1983). Title 28 U.S.C. § 1471(c) [4] provides that the bankruptcy courts shall exercise all of the jurisdiction *conferred by this section* on the district courts, *i.e.,* conferred by section 1471. Thus, if old section 1334 survives, then the district courts during the transition period continue to have jurisdiction over matters and proceedings independent of the jurisdiction which section 1471(c) directs the bankruptcy courts to exercise.[5] The Court concludes that section 1471 was intended by Congress to be the sole source defining where bankruptcy jurisdiction resides, and that its enactment implicitly repealed old section 1334. *See id., In re Conley,* 26 B.R. at 896, 10 B.C.D. at 15; *In re Seven Springs Apartments,* 10 B.C.D. 634, 653–55 (Bkrtcy.N.D.Ga.1983).

■ Finally, 28 U.S.C. § 1331 provides: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

This provision is thoroughly discussed in *Gillman v. Preston Family Investment Co. (In re Richardson),* 27 B.R. 407, 418–27, 10 B.C.D. 39, 47–52 (Bkrtcy.D.Utah) *vacated on other grounds sub nom. Color Craft Press Ltd. v. Nationwide Shopper Systems, Inc. (In re Color Craft Press, Ltd.),* 27 B.R. 962, 10 B.C.D. 182 (D.Utah 1983). There the court notes other federal laws which have been held not to be the bases of federal question jurisdiction under section 1331, and concludes that section 1331 was not intended to grant subject matter jurisdiction of actions arising under federal bankruptcy law.[6] *Id.* 27 B.R. at 420–23, 10

---

4. Applicable during the transition period pursuant to the Reform Act, § 405(b).

5. The appeals provisions of the Reform Act "were hastily drawn during an eleventh hour compromise that produced the present jumble as well as apparently inadvertent inconsistencies in the statute." *Maiorino v. Branford Savings Bank,* 691 F.2d 89, 92 (2d Cir.1982) (citations omitted). This is perhaps the best expla-

nation for the continuance of old section 1334 during the transition period.

6. *Gillman* points out that every bankruptcy law enacted by Congress has included an express, carefully delineated grant of bankruptcy jurisdiction to the district court despite the existence since 1875 of section 1331. *See In re Wildman,* 10 B.C.D. 668, 682–83 (Bkrtcy.N.D. Ill.1983). Furthermore before the elimination of the amount in controversy requirement from

B.C.D. at 48–50. Furthermore, as noted above, district court jurisdiction over bankruptcy proceedings pursuant to section 1331 would be inconsistent with Congress' intent that 28 U.S.C. § 1471 be the sole source of bankruptcy jurisdiction, and thus such jurisdiction would not survive the enactment of the Reform Act. *See id.* at 423–27, 10 B.C.D. at 50–52; *Otero Mills, Inc. v. Security Bank & Trust (In re Otero Mills, Inc.),* 10 B.C.D. 89, 90 (Bkrtcy.D.N.M.) *reversed and remanded* 28 B.R. 386 (D.N.M.1983). Adopting the analysis of the Utah bankruptcy court in *Gillman,* this court finds that the district court is not granted bankruptcy jurisdiction by section 1331. *See Gillman,* 27 B.R. at 418–27, 10 B.C.D. at 47–52; *Seven Springs Apartments,* 10 B.C.D. at 652–53; *Otero Mills, Inc.,* 10 B.C.D. at 90 *reversed and remanded* 28 B.R. 386; *see also In re Wildman,* 10 B.C.D. 668, 682–83 (Bkrtcy.N.D.Ill.1983).

In summary, this court holds that neither the district court nor the bankruptcy court has jurisdiction over the proceedings here at issue.

### RULE 41

■ Assuming, however, that the district court does have jurisdiction, the Court will address the validity of Rule 41, Local Rules of the District Court for the District of Maine (hereafter "Rule 41").[7] That rule, which became effective December 25, 1982, provides for the automatic reference to the bankruptcy judges of this district of all cases under Title 11, all civil proceedings arising under Title 11, and all civil proceedings arising in or related to cases under Title 11. Rule 41(c)(1). In proceedings "arising under" or "arising in," the bank-

ruptcy judge may enter a final order *effective upon entry.* Rule 41(d)(2). The burden of obtaining a stay pending appeal rests upon appellant. Failure to obtain a stay in some cases can result in the loss of any effective appellate review. Bankruptcy Rule 805; *see, e.g., Greylock Glen Corp. v. Community Savings Bank,* 656 F.2d 1, 4 (1st Cir.1981). In all "related proceedings" and in appeals, the district court may, *but need not,* require a *de novo* hearing. Rule 41(e)(2)(B). Thus, Rule 41 implements a system in which Article III controversies, *i.e.,* related proceedings, are routed to the district court for final determination (though nothing in Rule 41 *prevents* the district court from deferring to the bankruptcy judge's proposed order and findings), while other matters are decided in the first instance (and in certain cases, for all intents and purposes, in the last instance) by bankruptcy judges. Yet the Supreme Court in *Northern Pipeline* specifically refused to sanction such a system, and stated "that it is for *Congress* to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to the requirements of Art. III, in the way that will best effectuate the legislative purpose."[8] *Northern Pipeline,* —— U.S. at —— n. 40, 102 S.Ct. at 2880 n. 40 (emphasis added); *see id.* —— U.S. at ——, 102 S.Ct. at 2882 (Rehnquist, J. and O'Connor, J., concurring). Moreover, "[i]n the past, attempts by courts to carve out and delegate jurisdiction [without statutory authorization] have been roundly criticized." *Moody v. Martin,* 27 B.R. 991, 998, 10 B.C.D. 575, 579 (W.D.Wis.1983) (court upholds validity of emergency rule). This court finds that Rule 41 is too broad a

---

section 1331 in 1980, that section clearly could not have provided a sufficient basis for bankruptcy jurisdiction. Finally, bankruptcy matters, which involve a supervisory process combining judicial and administrative functions, do not fit easily within section 1331's jurisdictional grant over "civil actions."

7. Rule 41 appears as an appendix to this memorandum.

8. The Supreme Court again expressed its intent that Congress act by taking the unusual step of staying its judgment to "afford *Congress* an opportunity to reconstitute the bankruptcy

courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." *Northern Pipeline,* —— U.S. at ——, 102 S.Ct. at 2880 (emphasis added). "Presumably, a stay would have been unnecessary if the district courts could solve the jurisdictional deficiency pending appropriate legislative enactment." *In re United Grocers Corp.,* 29 B.R. 309, CCH Bank. L.Rep. ¶ 69,187 at 82,343 (Bkrtcy.D.N.J.1983); *see In re Seven Springs Apartments,* 10 B.C.D. 634, 646 (Bkrtcy.N.D.Ga.1983).

delegation of authority to survive in light of *Northern Pipeline.* *See In re United Grocers Corp.,* 29 B.R. 309, CCH Bank.L. Rep. ¶ 69,187 at 82,342–43 (Bkrtcy.D.N.J. 1983); *In re Conley,* 26 B.R. 885, 897–98, 10 B.C.D. 10, 16–17 (Bkrtcy.M.D.Tenn.1983); *Williamson v. General Finance Co. of Georgia (In re Williamson),* 28 B.R. 276, 280–85, 10 B.C.D. 298, 301–04 (Bkrtcy.M.D.Ga.1983); *see also Walter E. Heller and Co., Southeast, Inc. v. Matlock Trailer Corp. (In re Matlock Trailer Corp.),* 27 B.R. 318, 326–29, 10 B.C.D. 372, 376–78 (M.D.Tenn.1983); *cf. Winters National Bank & Trust Co. v. Schear Group (In re Schear Realty & Investment Co., Inc.),* 25 B.R. 463, 469, 9 B.C.D. 1210, 1215 (Bkrtcy.S.D.Ohio 1982).

■ Moreover, Rule 41 cannot stand if it is inconsistent with the Federal Rules of Civil Procedure. Fed.R.Civ.P. 83 ("Each district court . . . may from time to time make and amend rules governing its practice not inconsistent with these rules."). Thus, the validity of the wholesale reference of cases and proceedings from the district court to the bankruptcy judges must be determined in accordance with the standards set out in Fed.R.Civ.P. 53. *In re Matlock Trailer Corp.,* 27 B.R. at 327, 10 B.C.D. at 377. That rule authorizes the reference of cases to a master or referee in a non-jury case only upon a showing of exceptional circumstances. Reference to a master is to be "the exception and not the rule." Fed.R.Civ.P. 53(b). Nor can a master enter a dispositive order—only the district court can do so. Thus, Rule 41 is deficient on at least two counts: it refers cases to the bankruptcy judge without the requisite showing of exceptional conditions,[9] and it permits the bankruptcy judge to enter dispositive orders without approval or review by the district judge.[10] *In re Matlock Trailer Corp.,* 27 B.R. at 326–28, 10 B.C.D. at 377–78, *see Herrera v. Weaver Construction Co. (In re Herrera),* 10 B.C.D. 123, 127–28 (Bkrtcy.D.Colo.) *reversed and remanded* 29 B.R. 49 (D.Colo.1983); *Williamson v. General Finance Co. of Georgia (In re Williamson),* 28 B.R. 276, 282–84, 10 B.C.D. 298, 302 (Bkrtcy.M.D.Ga.1983); *In re Seven Springs Apartments,* 10 B.C.D. 634, 658–59 (Bkrtcy.N.D.Ga.1983).[11]

■ The Court finds no authority in 11 U.S.C. § 105 for the promulgation of Rule 41. Section 105 empowers the "bankruptcy court" to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11. While the district courts are "courts of bankruptcy," they are not "bankruptcy courts." *In re Wildman,* 10 B.C.D. 668, 672–74 (Bkrtcy. N.D.Ill.1983). Thus, section 105 grants the district courts no power. More importantly, section 105 is intended to be the basis for the court's exercise of power "in the *administration* of a bankruptcy case." 2 *Collier on Bankruptcy* ¶ 105.01 (15th ed. 1982) (emphasis added). The court is authorized to issue any "order, process, or judgment," not implement a rule. *In re Seven Springs Apartments,* 10 B.C.D. 634, 656–57 (Bkrtcy.

---

**9.** The Supreme Court has held that neither calendar congestion nor the complexity of issues involved constitute exceptional conditions warranting reference to a master. *See LaBuy v. Howes Leather Co., Inc.,* 352 U.S. 249, 259, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957).

**10.** A further inconsistency exists with respect to the district court's review of the master's report. In non-jury actions, the district judge shall accept the master's findings of fact unless clearly erroneous. Fed.R.Civ.P. 53(e)(2). Under Rule 41, when reviewing a bankruptcy court's order or judgment, the district court need give no deference to the findings of the bankruptcy judge. Rule 41(e)(2)(B).

**11.** This same analysis applies to Bankruptcy Rule 927 and to 28 U.S.C. § 2071, both of which have been cited in support of Rule 41.

Section 2071 provides that all courts established by Act of Congress may prescribe rules for the conduct of their business that are "consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court." Bankruptcy Rule 927 provides that the court may make rules "not inconsistent with these rules." Fed.R.Civ.P. 53 is incorporated into the Bankruptcy Rules by Bankruptcy Rule 513.

It should also be noted that Rule 41, by restoring the bifurcated judicial system abolished by the Reform Act, conflicts with an "Act of Congress." *In re Seven Springs Apartments,* 10 B.C.D. 634, 657 (Bkrtcy.N.D.Ga. 1983).

N.D.Ga.1983). It appears that section 105 is intended to aid the bankruptcy court in specific cases, not to enable a wholesale delegation of bankruptcy jurisdiction to another tribunal.[12] *See id.; In re Conley,* 26 B.R. 885, 901, 10 B.C.D. 10, 19 (Bkrtcy.M.D. Tenn.1983); *Countryman, Emergency Rule Compounds Emergency,* 57 Am.Bankr.L.J. 1, 9–10 (1983).

In conclusion, the Court is disturbed by the tendency to classify Rule 41 as a mere procedural device or administrative regulation. *Northern Pipeline* sets forth at length the values served by the requirements of Article III of the United States Constitution. —— U.S. at ——, 102 S.Ct. at 2864–66. In removing jurisdiction from the bankruptcy courts, the Supreme Court acted to guarantee judicial independence and impartiality, which the Constitution commands be "jealously guarded." *Id.* at ——, 102 S.Ct. at 2866. Surely, a rule which, practically speaking, resurrects a scheme that the Supreme Court has held endangers those fundamental values must be seen as more than an administrative rule of efficiency.[13]

The motions to dismiss shall be granted. The Court recognizes, however, that circumstances require that the orders of dismissal be reviewed by a district judge prior to their becoming effective. In light of the effect this decision may have upon other pending matters, the Court certifies that circumstances require immediate review of these orders by a district judge. Rule 41(e)(3).[14] Therefore, the Court shall stay the effect of its orders pending immediate review by a district judge pursuant to Rule 41(e)(2)(ii).

Enter order.

## APPENDIX

## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

## ORDER

The Local Rules of the District Court for the District of Maine are hereby amended, effective December 25, 1982 by adding new Rule 41 as follows:

## RULE 41
## ADMINISTRATION OF BANKRUPTCY SYSTEM

(a) Emergency Resolution

The purpose of this rule is to supplement existing law and rules in respect to the authority of the bankruptcy judges of this district to act in bankruptcy cases and proceedings until Congress enacts appropriate remedial legislation in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982), or until March 31, 1984, whichever first occurs.

---

**12.** Nor is the Court impressed with the argument that 28 U.S.C. §§ 331, 332 authorize Rule 41. Those sections permit the judicial council to make necessary and appropriate orders for the effective and expeditious administration of justice. (Rule 41 was promulgated in accordance with such an order. *See* note 1, *supra.*) It seems clear that these sections authorize rules relating to business operations of the courts and the practice and procedures to be observed in the courts, not the wholesale delegation of jurisdiction. *See In re Seven Springs Apartments,* 10 B.C.D. 634, 656 (Bkrtcy.N.D. Ga.1983). Moreover, nothing indicates that rules promulgated under order of a judicial council are exempt from the dictates of Fed.R. Civ.P. 83 that they not be inconsistent with the Federal Rules of Civil Procedure.

**13.** It also appears that Rule 41 may permit the bankruptcy court to enter final orders in cases governed by state law in direct contravention of *Northern Pipeline. See In re Seven Springs Apartments,* 10 B.C.D. 634, 662–63 (Bkrtcy.N. D.Ga.1983).

**14.** At first glance, it may appear incongruous that after finding the district court to be without jurisdiction and Rule 41 to be invalid, the Court relies upon that rule and certifies the case to the district court. On the other hand, clearly a bankruptcy court, itself having been declared without jurisdiction, is not the court which should decide the scope of the district court's jurisdiction. Failure to certify this case probably would not avoid this incongruity, since any appeal would be taken (1) to the district court, and (2) pursuant to Rule 41. Given the need for a higher court's decision on these issues, the Court feels compelled to follow the procedures of Rule 41 that should result in the most expeditious review.

The judges of the district court find that exceptional circumstances exist. These circumstances include: (1) the unanticipated unconstitutionality of the grant of power to bankruptcy judges in section 241(a) of Public Law 95–598; (2) the clear intent of Congress to refer bankruptcy matters to bankruptcy judges; (3) the specialized expertise necessary to the determination of bankruptcy matters; and (4) the administrative difficulty of the district courts' assuming the existing bankruptcy caseload on short notice.

Therefore, the orderly conduct of the business of the court requires this referral of bankruptcy cases to the bankruptcy judges.

(b) Filing of bankruptcy papers

The court of bankruptcy constituted by § 404 of Public Law 95–598 shall continue to be known as the United States Bankruptcy Court of this district. The Clerk of the Bankruptcy Court is hereby designated to maintain all files in bankruptcy cases and adversary proceedings. All papers in cases or proceedings arising under or related to Title 11 shall be filed with the Clerk of the Bankruptcy Court regardless of whether the case or proceeding is before a bankruptcy judge or a judge of the district court, except that a judgment by the district judge shall be filed in accordance with Rule 921 of the Bankruptcy Rules.

(c) Reference to Bankruptcy Judges

(1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.

(2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party. A motion for withdrawal of reference shall not stay any bankruptcy matter pending before a bankruptcy judge unless a specific stay is issued by the district court. If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to

the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise. Any matter in which the reference is withdrawn shall be reassigned to a district judge in accordance with the court's usual system for assigning civil cases.

(3) Referred cases and proceedings may be transferred in whole or in part between bankruptcy judges within the district without approval of a district judge.

(d) Powers of Bankruptcy Judges

(1) The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment;

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge; or

(D) jury trials.

Those matters which may not be performed by a bankruptcy judge shall be transferred to a district judge.

(2) Except as provided in (d)(3), orders and judgments of bankruptcy judges shall be effective upon entry by the Clerk of the Bankruptcy Court, unless stayed by the bankruptcy judge or a district judge.

(3)(A) Related proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or a state court. Related proceedings include, but are not limited to, claims brought by the estate against parties who have not filed claims against the estate. Related proceedings do not include: contested and uncontested matters concerning the administration of the estate; allowance of and objection to claims against the

estate; counterclaims by the estate in whatever amount against persons filing claims against the estate; orders in respect to obtaining credit; orders to turn over property of the estate; proceedings to set aside preferences and fraudulent conveyances; proceedings in respect to lifting of the automatic stay; proceedings to determine dischargeability of particular debts; proceedings to object to the discharge; proceedings in respect to the confirmation of plans; orders approving the sale of property where not arising from proceedings resulting from claims brought by the estate against parties who have not filed claims against the estate; and similar matters. A proceeding is not a related proceeding merely because the outcome will be affected by state law.

(B) In related proceedings the bankruptcy judge may not enter a judgment or dispositive order, but shall submit findings, conclusions, and a proposed judgment or order to the district judge, unless the parties to the proceeding consent to entry of the judgment or order by the bankruptcy judge.

(e) District Court Review

(1) A notice of appeal from a final order or judgment or proposed order or judgment of a bankruptcy judge or an application for leave to appeal an interlocutory order of a bankruptcy judge, shall be filed within 10 days of the date of entry of the judgment or order or of the lodgment of the proposed judgment or order. As modified by sections (e) 2A and B of this rule, the procedures set forth in Part VIII of the Bankruptcy Rules apply to appeals of bankruptcy judges' judgments and orders and the procedures set forth in Bankruptcy Interim Rule 8004 apply to applications for leave to appeal interlocutory orders of bankruptcy judges. Modification by the district judge or the bankruptcy judge of time for appeal is governed by Rule 802 of the Bankruptcy Rules.

(2)(A) A district judge shall review:

(i) an order or judgment entered under paragraph (d)(2) if a timely notice of appeal has been filed or if a timely application for leave to appeal has been granted;

(ii) an order or judgment entered under paragraph (d)(2) if the bankruptcy judge certifies that circumstances require that the order or judgment be approved by a district judge, whether or not the matter was controverted before the bankruptcy judge or any notice of appeal or application for leave to appeal was filed; and

(iii) a proposed order or judgment lodged under paragraph (d)(3), whether or not any notice of appeal or application for leave to appeal has been filed.

(B) In conducting review, the district judge may hold a hearing and may receive such evidence as appropriate and may accept, reject, or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order or judgment.

(3) When the bankruptcy judge certifies that circumstances require immediate review by a district judge of any matter subject to review under paragraph (e)(2), the district judge shall review the matter and enter an order or judgment as soon as possible.

(4) It shall be the burden of the parties to raise the issue of whether any proceeding is a related proceeding prior to the time of the entry of the order or judgment of the district judge after review.

(f) Local Rules

In proceedings before a bankruptcy judge, the local rules of the bankruptcy court shall apply. In proceedings before a judge of the district court, the local rules of the district court shall apply.

(g) Bankruptcy Rules and Title IV of Public Law 95–598

Courts of bankruptcy and procedure in bankruptcy shall continue to be governed

by Title IV of Public Law 95–598 as amended and by the bankruptcy rules prescribed by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075 and limited by SEC. 405(d) of the Act, to the extent that such Title and Rules are not inconsistent with the holding of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982).

(h) Effective Date and Pending Cases

This rule shall become effective December 25, 1982, and shall apply to all bankruptcy cases and proceedings not governed by the Bankruptcy Act of 1898 as amended, and filed on or after October 1, 1979. Any bankruptcy matters pending before a bankruptcy judge on December 25, 1982 shall be deemed referred to that judge.

Dated at Portland, Maine this 23rd day of December, 1982.

/s/ William S. Brownell, Clerk   For the Court:

/s/ Carole E. Dyer          /s/ Edward T. Gignoux
Deputy Clerk              Chief Judge, U. S. District Court