## In re HIDALGO INDUSTRIES, INC., Debtor.

## Luis R. GUASCH, Trustee, Plaintiff,

v.

## JUNIOR WHOLESALE CORP., Defendant.

**Bankruptcy No. B–82–01335–A.
Adv. No. 83–0384.**

United States Bankruptcy Court, D. Puerto Rico.

Nov. 10, 1983.

ORDER

ANTONIO I. HERNANDEZ-RODRI-GUEZ, Bankruptcy Judge.

On May 27, 1983, trustee filed a complaint against Junior Wholesale Corp. ("JWC") for collection of a pre-petition account receivable from JWC, seeking payment upon a matured debt of $264,973.00 for merchandise sold. On June 24, 1983, JWC appeared specially reserving all defenses, including those regarding service and jurisdiction. Subsequently, JWC filed a motion to dismiss for lack of subject matter jurisdiction and demanded trial by jury. In said motion JWC asserted the decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and alleged the invalidity of the Emergency Rule promulagated by the U.S. District Court for the District of Puerto Rico. Said rule was adopted on December 23, 1982 and became effective on December 25, 1982. JWC also moved for dismissal on grounds of failure of process, lack of jurisdiction over its person, and failure to join an indispensable party plaintiff. We do not reach these issues in view of our conclusion that we lack jurisdiction over the subject matter.

Trustee filed a motion in opposition to JWC's motion for dismissal. A hearing was held on October 17, 1983, whereupon the matter was taken under advisement.

ANALYSIS

The legal framework for the controversy before us is provided by the decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In said case the Supreme Court analyzed the jurisdictional fountainhead of the bankruptcy courts, 28 U.S.C. Section 1471(c) and found it constitutionally wanting.

Taking off from the doctrine that the "essential attributes" of judicial power ultimately lie in the authority and the responsibility to make an informed and final determination of the controversy, the court in

Gilberto Mayo Pagán, Hato Rey, P.R., for trustee.

David Freedman from O'Neill & Borges, Hato Rey, P.R., for Junior Wholesale Corp.

*Northern Pipeline* went on to recognize that Congress may properly vest traditional functions in a non-Article III officer when it creates a substantive federal right as long as the functions of the non-Article III entity are limited in such a way that the "essential attributes" of judicial power are retained in the Article III court. *Northern Pipeline,* supra, at 80, 102 S.Ct. at 2876, 73 L.Ed.2d at 621. The same constitutional requirement was found to apply in the adjudication of private state-created rights. *Id.* When measured against these standards, section 1471(c), supra., was found to be unconstitutional because it permitted adjudication of constitutionally protected private rights arising under non-federal law, by a non-Article III judge.

While apparently recognizing that the instant proceeding is "related to" cases under Title 11[1] of the United States Code, in his opposition to dismissal, trustee urged the court to order turnover pursuant to section 542 of the Bankruptcy Code, 11 U.S.C. Sec. 542. However, we find section 542 inapposite because what became property of the estate at the time the case commenced was not money itself but rather, an account receivable subject to all of the defenses which an account debtor (J.W.C.) might interpose. Thus, while the estate had a cause of action to recover on the account receivable, it must still be presented in a *court of competent jurisdiction.*[2]

Trustee's cause of action to recover on the account receivable is based on local, non-bankruptcy law. His right to recover on what he avers is a receivable from JWC is "one of private right, that is, of liability of one individual to another under the law as defined. "*Northern Pipeline,* supra, 458 U.S. 50 at 71, 102 S.Ct. 2858 at 2871, 73 L.Ed.2d 598 at 615, citing *Crowell v. Benson,* 285 U.S. 22 at 51, 52 S.Ct. 285 at 292, 76 L.Ed. 598. Being such an action, it must be brought to this court as a "related proceeding" within the meaning of section (d)(3) of the Emergency Rule. In light of *Northern*

*Pipeline,* supra; we must first determine whether we have subject matter jurisdiction to adjudicate this claim arising from such local, non-bankruptcy law.

Invoking *Northern Pipeline* JWC challenges our subject matter jurisdiction advancing two theories:

A. That the Bankruptcy Code gave the U.S. District Court no original jurisdiction over bankruptcy matters, but rather Congress conferred original jurisdiction only on the Bankruptcy Courts, which original jurisdiction was invalidated by *Northern Pipeline;* and

B. That the local Emergency Rule is invalid.

### 1. Original jurisdiction of the district court

JWC argues that, in enacting 28 U.S.C. § 1471, Congress intended to place power exclusively in the bankruptcy courts and that the legislative history so indicates. H.R.Rep. 595, 95th Cong. (1st Sess.) at 14–15, U.S.Code Cong. & Admin.News 1978, p. 5787, 28 U.S.C. Sec. 1471(c). See also *In re Seven Springs Apartments Co.,* 33 B.R. 458, 10 B.C.D. 634, 641–646 (Bkrtcy.N.D.Ga. 1983); and *In re South Portland Shipyard and Marine Railways Corp.,* 31 B.R. 770, 10 B.C.D. 1012, 1013–1016 (Bkrtcy.D.Me.1983), *aff'd on other grounds* 32 B.R. 1012 (D.D.C. Me.1983).

This argument is premised on the assumption that 28 U.S.C. Sec. 1471(c), which was declared unconstitutional in *Northern Pipeline,* is inseparable from Sec. 1471(a) and (b). Thus, the argument goes, subsections (a) and (b) of Sec. 1471 were also invalidated by *Northern Pipeline.*

Said argument of inseparability is not persuasive. Sections 1471(a) and (b) expressly state "The *district* court shall have *original* and exclusive jurisdiction of all cases under Title 11; ... (b) The *district*

---

**1.** See last phrase of 28 U.S.C. Section 1471(b)

**2.** Trustee also invoked 28 U.S.C. Section 1473 as a jurisdictional basis. However said section

deals only with venue and does not accord jurisdiction for trustee's action.

courts shall have *original* but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in, or related to cases under Title 11." The statutory language is clear in that the district courts were vested with original jurisdiction in cases arising under or related to cases under Title 11.

We adhere to the reasoning of the U.S. District Court for the District of Maine in *South Portland Shipyard and Marine Railways Corp.,* 32 B.R. 1012, 10 B.C.D. 1385 (D.D.C.Me.1983). In *South Portland* the district court concluded that *Northern Pipeline* did *not* deal with the jurisdictional grants to the district courts contained in 28 U.S.C. § 1471(a) and (b) since the only challenge in that case was to jurisdiction of the *bankruptcy courts.*

We cannot assume the Supreme Court to have decided questions not present in *Northern Pipeline:* "No challenge to the jurisdiction of the District Court was raised because *Northern Pipeline* involved Marathon's motion to dismiss a state law contract claim brought in the *Bankruptcy court.*" *South Portland,* Id. at 1015, 10 B.C.D. at 1387.

Like the district court in *South Portland,* we reject the notion that the Supreme Court in *Northern Pipeline* also struck down subsections (a) and (b) of 28 U.S.C. § 1471:

> "Plainly, therefore, *Northern Pipeline* does not address the issue of the District Court's jurisdiction to hear bankruptcy cases. Some bankruptcy courts, like the one below, have mistakenly strained to find that the Supreme Court in *Northern Pipeline* also struck down the grants of jurisdiction to the District Courts contained in 28 U.S.C. in Sec. 1471(a) and (b). *See, e.g., In re Seven Springs Apartments* [33 B.R. 458] 10 B.C.D. 634 (Bkrtcy.N.D. Ga.1983); *In re Conley,* 26 B.R. 885 (Bkrtcy.M.D.Tenn.1983); *Winters National Bank & Trust v. Schear Group,* 25 B.R. 463, 469 (Bkrtcy.S.D.Ohio 1982). For the

most part, these courts base their analysis on congressional intent to eliminate a bifurcated system of bankruptcy jurisdiction by placing all bankruptcy jurisdictional grants to the District Court in Sec. 1471(a) and (b) are viewed as non-grants, mere legitimating devices which are inseparable from Sec. 1471(c)'s grant to the Bankruptcy Courts of the exercise of 'all of the jurisdiction conferred by this section on the district court.' 28 U.S.C. Sec. 1471(c). Without doubt Congress did intend to eliminate the bifurcated system of bankruptcy jurisdiction with the enactment of Section 1471(c). Congress' far more fundamental intent, however, was to establish a functioning bankruptcy system. A determination that jurisdiction exists in the District Court is essential if that purpose is to be attained."

"... It appears that neither Justice, (Brennan nor Rehnquist) was willing or able to divide the unitary grant of jurisdiction to the Bankruptcy Courts in Sec. 1471(c). Their focus on that jurisdictional grant, however, and their failure to discuss the jurisdiction of the District Courts in bankruptcy matters shows without a doubt that they were both willing and able to sever the unconstitutional subsection (c) from the rest of the statute, leaving subsections (a) and (b) intact to serve as a basis for District Court jurisdiction over bankruptcy matters."

"... The grant of bankruptcy jurisdiction to the District Courts in Sec. 1471(a) and (b) remained unchallenged and substantially undiscussed in *Northern Pipeline....* Id. at 1387–88."

■ Our conclusion that *Northern Pipeline* did not invalidate subsections (a) and (b) of 28 U.S.C. § 1471 renders moot JWC's argument that former 28 U.S.C. Sec. 1334 is the sole possible jurisdictional source for the district courts.

We therefore conclude that, now that the stay of *Northern Pipeline* has expired,[3] the

---

**3.** The "stay" refers to the stay of judgment issued by the Supreme Court in *Northern Pipeline,* until October 4, 1982, to afford Congress

an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudi-

U.S. District courts have jurisdiction under 28 U.S.C. Sec. 1471(a) and (b). We must now consider whether upon exercising said jurisdiction and adopting the Emergency Rule mentioned above, the district court has validly delegated its judicial authority.

### 2. *Validity of the Emergency Rule*

(a) Delegation of judicial power

Our Emergency Rule is substantially similar to those promulgated by other federal district courts.[4] The Rule was "drafted by the Judicial Conference to quell the chaos that was foreseen for the bankruptcy system following expiration of the Supreme Court's stay of its decision in *Northern Pipeline*. The Rule was endorsed by the First Circuit Judicial Council . . .". *South Portland*, 32 B.R. at 1018, 10 B.C.D. at 1389.

As in the case of Rule 41 of the Local Rules of the District Court for the District of Maine, our Emergency Rule provides the Bankruptcy Judges with all the powers necessary to handle bankruptcy cases, except that they are not empowered to conduct jury trials, hear appeals, entertain proceedings for contempt or for injunctions against a court. The Rule further distinguishes between "related proceedings" and other proceedings. This latter category, sometimes referred to as "core proceedings" include traditional functions of the bankruptcy court such as claim allowance, discharge, and distribution to creditors. *See, In re Seven Springs Apartments,* 33 B.R. 458, 10 B.C.D. 634, 637 (Bkrtcy.N.D.Ga.1983.)

The following provisions of the Emergency Rule ("E.R.") are of particular interest here:

1. All civil proceedings arising in, or *related to,* cases under Title 11 are referred to the bankruptcy judges (emphasis applied). E.R.(c)(1).

2. In a "related proceeding", the bankruptcy judge may, on consent of the parties,

enter a dispositive order or judgment. E.R.(d)(3)(B).

3. For those matters where there is no consent, the bankruptcy judge prepares findings of fact, conclusions of law, and proposed judgment or order, which are transmitted to the district court, E.R.(d)(3)(B). The district court may (but need not) hold a hearing and may (but need not) receive such evidence as appropriate; and may (or may not) accept, reject or modify, in whole or in part, the order or judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. E.R. (E)(2)(B).

4. The Bankruptcy Judges may not conduct jury trials. E.R.(d)(1)(D).

There is no question that the Emergency Rule constitutes wholesale delegation of a complete category of cases (i.e., all cases arising under Title 11, and arising in or *related to,* cases under Title 11) from the U.S. District Court to the U.S. Bankruptcy Court. However, while Congress may create a system of such referral, "The creation of such a system by the Judicial Branch is quite a different matter." *South Portland,* 32 B.R. at 1021, 10 B.C.D. at 1391.

The jurisdiction of the bankruptcy court over related proceedings as delegated by the district court in the Emergency Rule, is premised on the consent of the parties for adjudication in the last instance. But consent is not the answer which automatically disposes of questions of undue delegation of judicial power. It cannot overcome the bar against submission of "related matters" to non-Article III courts and judges which would violate "the most fundamental attributes of the institutional integrity of the Judicial Branch and of the general government under the doctrine of separation of powers." *In re Romeo J. Roy Inc.,* 32 B.R. 1008, 10 B.C.D. 1392, 1394–5 (D.D.C.Me. 1983).

■ As did the U.S. District Court for the District of Maine in *Romeo,* we find

---

cation, without impairing the interim administration of bankruptcy courts.

4. A recent catalogue of cases sustaining or invalidating the Emergency Rule appear in *In re Seven Springs Apartments,* 33 B.R. 458, 10 B.C.D. 634 (Bkrtcy.N.D.Ga.1983) f. n. *1.*

that our Emergency Rule, whereby all bankruptcy proceedings, related and others, are routinely and *ex parte* referred to this bankruptcy court by the district court, is an unconstitutional abdication of the judicial function. In fact, said Emergency Rule "does exactly what the Constitution bars Congress from doing." *Romeo,* 32 B.R. at 1010, 10 B.C.D. at 1394.

The fact that the delegation in the Emergency Rule is made by a judicial body does not lead to a different result than the one met by Congress in *Northern Pipeline:*

> The Constitution is the permanent law of the land. It binds the Judicial Branch just as stringently and surely as it does the Legislative or Executive Branches of the Government. The clear mandate of *Northern Pipeline* is that Art. III of the Constitution bars, at the very least, compelled submission of "related matters" arising under state law to non-Art. III Courts, including adjunct tribunals of the Judicial Branch. The bar applies, whether those adjunct tribunals be Bankruptcy Courts, referees, special masters or magistrates, *because* they are not vested with Art. III judicial attributes. That bar, in addition to guaranteeing individual rights, exists to preserve the most fundamental attributes of the intitutional integrity of the Judicial Branch and of the general Government under the doctrine of separation of powers. *See Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* [712 F.2d 1305] (9th Cir. 1983). The force of that constitutional prescription derives from the blood and bone of the constitutional *corpus,* and it cannot be made to be dependent for its vitality upon the identity of the Branch of the Government which seeks to circumvent it.

> *Romeo,* 32 B.R. at 1010–11, 10 B.C.D. at 1394–5. (Emphasis in the original).

*In Pacemaker Diagnostic Clinic of America, Inc.* ("Pacemaker") cited in *Romeo,* supra the Court of Appeals for the Ninth Circuit held section 636(c) of the Magistrates Act, 28 U.S.C. 636(c), unconstitution-al after concluding said section contained an undue delegation of judicial power. Pursuant to the section, the federal magistrates were allowed to conduct civil trials and enter judgments, with the consent of the parties to the litigation. In adhering to the Supreme Court's decision in *Northern Pipeline,* the Court of Appeals in *Pacemaker* refused to find that the element of *consent* of the parties should lead to different results:

> Article III protects institutional concerns of our system of government that due process addresses only incidentally. See *Northern Pipeline,* 102 S.Ct. at 2865 and N. 10–2866. For example, if Congress created an administrative agency empowered to hold fair trials in all diversity cases, due process might be satisfied even though such trials would threaten constitutional policies concerning the separation of powers, the distribution of governmental power, and the protection of judicial independence. Under those circumstances the delegation to an administrative agency would be unconstitutional, even though complying with due process. *Therefore, rather than being exclusively a due process right of the litigants waivable by them, the requirement of an Article III Judge is jurisdictional and thus not waivable (by consent). Pacemaker, supra,* at 1312–1313. (Emphasis added).

(b) Internal referral system

Even *assuming* that the Emergency Rule is implemented in a case by case basis, leaving the ultimate determination in the Art. III court, that is, the district court, the conclusion of constitutional torpitude cannot be avoided.

"As Section 2071 of the Judicial Code, Rule 83 F.R.Civ.P. and former Bankruptcy Rule 927 make clear, any adjunct system established *by rule of the District* Court must not be inconsistent with the requirements of the referral system set forth in F.R.Civ.P. 53 and incorporated in Bankruptcy Rule 513." [5] *South Portland Shipyard,*

---

**5.** Former Rule 513 stated "If a reference is made in a bankruptcy case by a judge to a

# 810

*supra,* 32 B.R. at 1021, 10 B.C.D. at 1391. However, the new Rule 9031, entitled "Masters Not Authorized", states Rule 53 F.R. Civ.P. does not apply in cases under the Code. Thus, on one hand, the district courts are forced to adhere to the requirements of Rule 53 F.R.Civ.P. On the other hand, masters are not authorized by the Bankruptcy Rules. The seeming conflict, however, is resolved in favor of Rule 53 since Rule 9031 was enacted because the Code, *if left intact,* would have made the reference of bankruptcy cases superfluous:

> "The new Code was not left intact, however. Rule 9031, which specifically addressed the situation in which all bankruptcy cases are to be heard by Bankruptcy Judges in the first instance, is inconsistent with the situation created by *Northern Pipeline,* which forces the District Court to exercise bankruptcy jurisdiction. The Supreme Court's April 25, 1983 order promulgating the new rules makes it clear that *the new rules will not apply when in the opinion of the court their application in a pending proceeding would not be feasible or would work injustice, in which case, the former procedure applies." South Portland, supra,* (D.Me.) at f. n. 10. (emphasis added).

Here, the "former procedure" is that prescribed by former Bankruptcy Rule 513, which in turn refers to the Federal Rules of Civil Procedure, and therefore Rule 53.

It appears to us, as it also appeared to the U.S. District Court for the District of Maine, that the Emergency Rule fails to comply with the requirements of Rule 53, F.R.Civ.P.:

(a) The "exceptional circumstances" recited in Sec. (a) of the Emergency Rule are insufficient to constitute "the exception and not the rule" of Rule 53(b).

Moreover, even if they were sufficient for a particular case, they would not justify the blanket reference of bankruptcy cases to the Bankruptcy Judges of this district.

(b) The Emergency Rule makes final certain categories of the bankruptcy judges' judgments and orders effective upon entry, and reviewable only upon appeal or certification. This contravenes the nonfinality of the master's report under Rule 53(e).

(c) The Emergency Rule prohibits bankruptcy judges from conducting jury trials; [6] special masters may conduct jury trials under Rule 53.

(d) Rule 53 provides that the master shall be paid by the parties; but that Bankruptcy Judges to whom the Emergency Rule effects reference are compensated by the United States Government.

(e) The Emergency Rule mandates a *de novo* review (and permits *de novo* trial) review by the U.S. District Court in certain categories of decisions; this contravenes the "clearly erroneous" standard of Rule 53(e)(2).[7]

Therefore, even assuming that the constitutional infirmity of undue delegation could be surpassed in the context of this related proceeding, the Emergency Rule is still inconsistent with the Federal Rules of Civil Procedure. The operation of the Emergency Rule in this particular instance is invalid.

*Implementation of our order*

 Dismissal is warranted. We recognize, however, that circumstances require that the order of dismissal be reviewed by a district judge prior to its becoming effective. *In re South Portland Shipyard and Marine Railways Corporation,* 31 B.R. 770, 10 B.C.D. 1012, 1017 (Bkrtcy.D.Me.1983) aff'd 32 B.R. 1012, 10 B.C.D. 1385 (D.C.Me.

---

special master, the Federal Rules of Civil Procedure applicable to masters apply."

**6.** In this case defendant JWC demanded trial by jury.

**7.** It might also be noted that the Emergency Rule in this respect contravenes the "clearly erroneous" standard of Bankruptcy Rule 8013; but this inconsistency is less critical (see P. 14, *supra* ) than the patent incongruency with Rule

53, F.R.Civ.P. However, we note that in *In re James M. Morrissey,* 717 F.2d 100, 10 B.C.D. 1398 (3rd Cir.1983) the Court of Appeals for the Third Cir. held that the "clearly erroneous" standard for the review of bankruptcy appeals of Bankruptcy Rule 8013, prevails over the sentially similar *de novo* review provided by the local emergency rule for the Middle District of Pennsylvania.

1983). In light of the effect this decision may have upon other pending matters, the court certifies that circumstances require immediate review of these orders by a district judge. Emergency Rule (e)(3). As in *South Portland,* supra, at 779, fn. 14, 10 B.C.D. at 1017, fn. 14, we agree that it may appear "incongruous" that after finding the Emergency Rule invalid, we rely on the same to certify the case to the district court. However, contrary to the conclusion of the bankruptcy court in *South Portland,* we find that the district court does have jurisdiction pursuant to 28 U.S.C. § 1471(a) and (b) but that it unduly delegated the same to us *via* the Emergency Rule. Therefore, in certifying the matter to the district court we do not contravene our conclusion, but rather implement it. We thus stay the effect of our order of dismissal pending immediate review by a district judge pursuant to Emergency Rule (e)(2)(ii).

### Conclusion

This bankruptcy court has no power to hear the instant action referred pursuant to the provisions of the above-discussed Emergency Rule. Said rule is unconstitutional because it provides for an undue delegation of judicial power. Even assuming that this case was referred to us pursuant to an internal referral procedure embodied in the Emergency Rule, said referral is invalid for being inconsistent with the Federal Rules of Civil Procedure.

WHEREFORE, in view of all of the above, the motion to dismiss for lack of subject matter jurisdiction shall be granted. However, in accordance to the terms of our opinion above, it is hereby ORDERED that the effect of our order of dismissal be stayed and that this order be certified immediately pursuant to Emergency Rule (c)(3) for the consideration of a district judge.

SO ORDERED.